624 S.E.2d 761

STATE of West Virginia, Plaintiff
Below, Appellee,

v.

BRANDON B., Defendant
Below, Appellee,

West Virginia Department of Health and
Human Resources, Appellant.

State of West Virginia, Plaintiff
Below, Appellee,

v.

JaQuin B., Defendant Below, Appellee,

West Virginia Department of Health and
Human Resources, Appellant.

No. 32052, 32563.

Supreme Court of Appeals of West Virginia.

Submitted: Nov. 1, 2005.

Filed: Nov. 17, 2005.

Darrell V. McGraw, Jr., Attorney General, C. Carter Williams, Assistant Attorney General, Charleston, for Appellant, West Virginia Department of Health and Human Resources.

1. These cases originated in two different circuit courts: the Circuit Court of Brooke County and the Circuit Court of Berkeley County. Two different circuit judges presided over these matters in their respective counties. Because both cases involve the same issue, they were consolidated by order of this Court on March 9, 2005.

2. In *State v. JaQuin B.*, No. 32563, the appellees' arguments were submitted on briefs and were not presented orally.

Pamela Jean Games–Neely, Prosecuting Attorney, Christopher C. Quasebarth, Assistant Prosecuting Attorney, Martinsburg, for Appellee, State of West Virginia.

Paul E. Lane, Martinsburg, for Appellee, Brandon B.

Darrell V. McGraw, Jr., Attorney General, Christopher C. McClung, Assistant Attorney General, Charleston, for Appellant, West Virginia Department of Health and Human Resources.

Frank. H. Fitch, III, Assistant Prosecuting Attorney, Wellsburg, for Appellee, State of West Virginia.

Thomas M. Moore, Assistant Public Defender, Weirton, for Appellee, JaQuin B.

Justice DAVIS delivered the Opinion of the Court.

DAVIS, Justice.

In these consolidated cases, the West Virginia Department of Health and Human Resources (hereinafter "WVDHHR") appeals from the dispositions in two separate juvenile delinquency proceedings where the respective circuit courts[1] temporarily placed the juveniles in out-of-state facilities. The WVDHHR argues that the circuit courts failed to comply with W. Va.Code § 49–5D–3 (2004) (Repl.Vol.2004), which mandates the institution of a multidisciplinary treatment planning process. Based on the parties' arguments,[2] the record designated for our consideration, and the pertinent authorities, we reverse the decisions of the circuit courts.

## I.

## FACTUAL AND PROCEDURAL HISTORY

The case before us involves two consolidated juvenile cases: the case of Brandon B.[3]

3. "We follow our past practice in juvenile and domestic relations cases which involve sensitive facts and do not utilize the last names of the parties." *State ex rel. West Virginia Dep't of Human Servs. v. Cheryl M.*, 177 W.Va. 688, 689 n. 1, 356 S.E.2d 181, 182 n. 1 (1987) (citations omitted).

(hereinafter "Brandon") and the case of Ja-Quin B. (hereinafter "JaQuin"). The two cases are unrelated, except as to the application of W. Va.Code § 49–5D–3. For a background understanding of the cases, we will discuss the factual allegations separately as they apply to each juvenile.

### A. Case of Brandon

At the age of sixteen, Brandon was charged in a juvenile proceeding with battery on a police officer, obstructing/resisting, and domestic assault. Because of the nature of his alleged crimes, Brandon was placed at the Eastern Regional Detention Center while awaiting adjudication. An agreement was reached between the prosecutor and Brandon that Brandon would admit his actions, would be adjudicated a delinquent[4] for the battery and domestic assault, the obstructing charge would be dropped, and Brandon would be placed in the custody of the WVDHHR for placement at the Glen Mills School in Pennsylvania.

An adjudicatory hearing was held on March 19, 2004. The hearing was scheduled for the afternoon; however, the case was called during the morning docket. The transcript of the hearing reveals that the circuit court called the case early to accommodate one of the attorney's schedules. The court accepted the proposed agreement, and adjudged Brandon to be a delinquent. During the adjudicatory hearing, the court addressed the juvenile directly and, because the prosecutor and Brandon agreed about placement, made the decision "to move forward with disposition at this time, by agreement and at request of counsel, having signed the acknowledgment and admission which you and [your counsel] each signed, and further having entered the adjudication order reflecting adjudication." The court placed Brandon in the custody of the WVDHHR for placement at the Glen Mills School in Pennsylvania.

Later in the day on March 19, 2004, the juvenile probation officer (hereinafter "JPO") telephoned the WVDHHR to advise that a dispositional hearing had been held earlier that morning, and that a disposition had been reached. Brandon was placed at the Glen Mills school on April 12, 2004. Brandon did not object to the failure to convene a multi-disciplinary treatment planning process. Since the filing of the appellate briefs, Brandon successfully completed his placement program and was released.

### B. Case of JaQuin

JaQuin was fifteen years of age when a juvenile delinquency petition was filed. A plea agreement was reached wherein JaQuin admitted to a charge of brandishing a weapon, the State agreed to drop other pending charges and not to pursue other possible charges, and JaQuin agreed to placement at George Junior Republic, a juvenile facility in Pennsylvania.

An adjudicatory hearing and a dispositional hearing were held on June 16, 2004. The circuit court approved the plea agreement, adjudicated JaQuin as a delinquent, placed him in the custody of the WVDHHR, and ordered him placed at George Junior Republic. JaQuin was admitted to George Junior Republic on June 21, 2004. The WVDHHR received no notice of the delinquency petition or of the adjudicatory hearing, and was not involved in the plea negotiations. In fact, the WVDHHR had no knowledge of the juvenile proceeding until it received a letter from the placement facility regarding paperwork required under the interstate compact. JaQuin did not contest the adjudication process or his placement. He successfully completed the placement program in January 2005, and was released.

### C. Consolidated Cases

The WVDHHR filed petitions for appeal in both cases, arguing that the respective circuit courts failed to follow the mandatory guidelines set forth in W. Va.Code § 49–5D–3. It is undisputed that the WVDHHR was not present for either of the juvenile proceedings at the adjudicatory or the dispositional phases. Further, it is acknowledged that no multidisciplinary treatment planning process was instituted for either juvenile prior to the adjudicatory and dispositional hear-

---

4. " 'Juvenile delinquent' means a juvenile who has been adjudicated as one who commits an act which would be a crime under state law or a municipal ordinance if committed by an adult[.]" W. Va.Code § 49–1–4(8) (1998) (Repl.Vol.2004).

ings. These cases were consolidated by order of this Court on March 9, 2005.

## II.

## STANDARD OF REVIEW

■ To resolve the issue before us, we are required to consider the application of the relevant statute. In this regard, we have held that " '[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review.' Syllabus point 1, *Chrystal R.M. v. Charlie A.L.,* 194 W.Va. 138, 459 S.E.2d 415 (1995)." Syl. pt. 3, *Alden v. Harpers Ferry Police Civil Serv. Comm'n,* 209 W.Va. 83, 543 S.E.2d 364 (2001). Mindful of these applicable standards, we now consider the substantive issues herein raised.

## III.

## DISCUSSION

The WVDHHR appeals, bringing before this Court the issue of whether the circuit courts circumvented the statutorily-mandated multidisciplinary treatment planning process. The State of West Virginia, Brandon, and JaQuin (hereinafter referred to collectively as "appellees") argue first that the WVDHHR does not have standing to bring this appeal, and second that the issues raised herein are now moot and should be dismissed. Because the issues of mootness and standing are dispositive issues, we will address them prior to our examination of the statute. We will first direct our attention to the issue of standing, then we will turn our attention to the issue of mootness.

### A. Standing

The appellees argue that the WVDHHR lacks standing to bring this appeal. The contention of the appellees is that both juveniles agreed with the adjudication and dispositions; therefore, the WVDHHR does not have the right to appeal the result. Moreover, the appellees buttress this argument by averring that only the juveniles and the prosecutors are parties to the underlying actions; therefore, as a nonparty, the WVDHHR is

not afforded appellate recourse. We cannot agree with either argument.

■ We have previously stated that "standing is defined as '[a] party's right to make a legal claim or seek judicial enforcement of a duty or right.' Black's Law Dictionary 1413 (7th ed.1999)." *Findley v. State Farm Mut. Auto. Ins. Co.,* 213 W.Va. 80, 94, 576 S.E.2d 807, 821 (2002). Ultimately, "the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *State ex rel. Abraham Linc Corp. v. Bedell,* 216 W.Va. 99, 111–12, 602 S.E.2d 542, 554–55 (2004) (internal citations omitted) (Davis, J., concurring). More specifically,

Standing is comprised of three elements: First, the party attempting to establish standing must have suffered an "injury-in-fact"—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent and not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct forming the basis of the lawsuit. Third, it must be likely that the injury will be redressed through a favorable decision of the court.

Syl. pt. 5, *Findley,* 213 W.Va. 80, 576 S.E.2d 807.

■ In the present case, the WVDHHR seeks to litigate its right to participate in the underlying juvenile proceedings, and is not seeking to enforce the rights of the juveniles. In fact, the affected juveniles filed briefs opposing the arguments set forth by the WVDHHR. Therefore, we must determine if the WVDHHR has a proper right to assert. An examination of the child welfare statutes [5] reveal that the WVDHHR "is designated as the agency to cooperate with the United States department of health and human services and United States department of justice in extending and improving child welfare services, to comply with regulations thereof, and to receive and expend federal funds for these services." W. Va.Code § 49–1–1(d) (1999) (Repl.Vol.2004). Further, we

5. Moreover, as discussed, *infra,* in Section III. C, W. Va.Code § 49–5D–3, which involves the multidisciplinary treatment planning process, sets

forth the WVDHHR's right to participate in juvenile proceedings.

are guided by the purpose of a multidisciplinary team, which

is to provide a system for evaluation of and coordinated service delivery for ... children undergoing certain status offense and delinquency proceedings. It is the further purpose of this article to establish, as a complement to other programs of the department of health and human resources, a multidisciplinary screening, advisory and planning system to assist courts in facilitating permanency planning, following the initiation of judicial proceedings, to recommend alternatives and to coordinate evaluations and in-community services.

W. Va.Code § 49–5D–1 (1998) (Repl.Vol. 2004). We have also previously stated that the WVDHHR must "assist the court in making its placement determination by providing the court with full information on placements and services available both in and out of the community. It is the court's responsibility to determine the placement." Syl. pt. 3, in part, *State v. Frazier*, 198 W.Va. 678, 482 S.E.2d 663 (1996).

The applicable statutes are clear that the WVDHHR is charged with an affirmative duty to participate in developing permanency plans, and also is financially obligated to expend its funds to provide services. In the present cases, the juveniles were placed in the WVDHHR's custody, and the WVDHHR was financially responsible for those placements. Moreover, the WVDHHR has an obligation under the applicable statutes to participate in the multidisciplinary treatment planning process. Therefore, we conclude that the WVDHHR does have standing to pursue this action. Now that we have determined that the WVDHHR can properly bring this action, we turn to the issue of mootness.

### B. Mootness

■ The appellees argue that, because Brandon and JaQuin have completed their programs and have been released, the statutory issue before the Court is now moot and should be dismissed. We have previously reasoned " '[a] case is not rendered moot even though a party to the litigation has had a change in status such that he no longer has a legally cognizable interest in the litigation or the issues have lost their adversarial vitality, if such issues are capable of repetition

and yet will evade review.' Syl. pt. 1, *State ex rel. M.C.H. v. Kinder*, 173 W.Va. 387, 317 S.E.2d 150 (1984)." Syl. pt. 1, *State ex rel. J.D. W. v. Harris*, 173 W.Va. 690, 319 S.E.2d 815 (1984).

■ The crux of the appeal before us involves the application of a statute. The fact that the two juveniles are no longer in their respective placements does not change our ability to review and examine the language of a statute. Further, it has been represented to this Court that the present cases represent a small portion of cases involving the pertinent statute. Therefore, it is evident that, if, in fact, the statute has been violated, this is certainly a situation capable of repetition. While the issue of the placement of the present juveniles is moot, the issue of the application of the statute is ripe for our consideration. Now that we have determined that the WVDHHR has standing, and that the issue is proper for our review, we turn to the matter of the application of the statute.

### C.W. Va.Code 49–5D–3 (2004) (Repl.Vol.2004)

In this case, we are called upon to determine whether W. Va.Code § 49–5D–3 is mandatory, and, if so, whether the circuit courts failed to follow the requirements set forth within the statute. We first note that "[a] multidisciplinary treatment planning process shall be established within each county of the state[.]" W. Va.Code § 49–5D–3(a)(1). Further,

[t]reatment teams shall assess, plan and implement a comprehensive, individualized service plan ... for juveniles and their families involved in ... delinquency proceedings ... when, in a delinquency proceeding, the court is considering placing the juvenile in the department's custody or placing the juvenile out-of-home at the department's expense pursuant to the provisions of section thirteen [§ 49–5–13] of said article. In any such ... delinquency case, the juvenile probation officer shall notify the local office of the department of health and human resources and the division of juvenile services at least five working days before the court proceeding in

order to allow the multidisciplinary treatment team to convene and develop a comprehensive individualized service plan for the child: Provided, That such notice is not required in cases where the child is already in state custody or there exist exigent circumstances which justify taking the child immediately into custody without a judicial proceeding.

W. Va.Code § 49–5D–3(a)(2).

■ We have had occasion to examine this statute[6] in a previous case, *E.H. v. Matin*, 201 W.Va. 463, 498 S.E.2d 35 (1997). In that case, we noted

"[i]t is well established that the word 'shall,' in the absence of language in the statute showing a contrary intent on the part of the Legislature, should be afforded a mandatory connotation." Syllabus Point 1, *Nelson v. West Virginia Public Employees Insurance Board*, 171 W.Va. 445, 300 S.E.2d 86 (1982).

Syl. pt. 1, *E.H. v. Matin*, 201 W.Va. 463, 498 S.E.2d 35. Based on the mandatory language within the statute, we previously held that "[m]ultidisciplinary treatment teams must assess, plan, and implement service plans pursuant to W. Va.Code § 49–5D–3." Syl. pt. 2, *id.* Further, we stated "[t]he language of W. Va.Code § 49–5D–3 is mandatory and requires the Department of Health and Human Resources to convene and direct treatment teams not only for juveniles involved in delinquency proceedings, but also for victims of abuse and neglect." Syl. pt. 3, *id.*

■ This statement of the law was further approved by this Court, at Syllabus point 8, in *State ex rel. Ohl v. Egnor*, 201 W.Va. 777, 500 S.E.2d 890 (1997), wherein the Court held " '[t]he language of W. Va.Code § 49–5D–3 [ (1996) (Repl.Vol.1996) ] is mandatory and requires the Department of Health and Human Resources to convene and direct treatment teams not only for juveniles involved in delinquency proceedings, but also for victims of abuse and neglect.' Syl. pt. 3, *E.H. v. Matin*, 201 W.Va. 463, 498 S.E.2d 35 (1997)." In *Ohl*, this Court found that the circuit court exceeded its authority under the statute when it placed a child in a private military school. This Court further recognized the mandatory nature of the WVDHHR's involvement in juvenile proceedings when it chastised the WVDHHR for failing to properly perform its statutorily-mandated duties.

■ Therefore, as the statute makes clear and as previously explained in the *Matin* and the *Ohl* case, the language of W. Va.Code § 49–5D–3 is mandatory. Accordingly, we hold that the language of W. Va. Code § 49–5D–3 (2004) (Repl.Vol.2004) requires every county to establish a multidisci-

---

**6.** The statute at issue has been amended since it was examined in *E.H. v. Matin*, 201 W.Va. 463, 498 S.E.2d 35 (1997). The 1996 version of the statute provided, in pertinent part:

(a) On or before the first day of January, one thousand nine hundred ninety-five, a multidisciplinary treatment planning process shall be established within each county of the state, either separately or in conjunction with a contiguous county by the secretary of the department with advice and assistance from the prosecutor's advisory council as set forth in section four [§ 7-4-4], article four, chapter seven of this code.

Treatment teams shall assess, plan and implement a comprehensive, individualized service plan for children who are victims of abuse or neglect and their families when a judicial proceeding has been initiated involving the child or children and for children and their families involved in delinquency proceedings.

(b) Each treatment team shall be convened and directed by the child's or family's case manager. The treatment team shall consist of the child's custodial parent(s) or guardian(s),

other immediate family members, the attorney(s) representing the parent(s) of the child, if assigned by a judge of the circuit court, the child, if the child is over the age of twelve, and if the child's participation is otherwise appropriate, the child, if under the age of twelve when the team determines that the child's participation is appropriate, the guardian ad litem, the prosecuting attorney or his or her designee, and any other agency, person or professional who may contribute to the team's efforts to assist the child and family.

W. Va.Code § 49–5D–3 (1996) (Repl.Vol.1996). The only substantive change relevant for our consideration is the addition of the notice provision, namely, the provision in W. Va.Code § 49–5D–3(a)(2) (2004) (Repl.Vol.2004), which provides: "In any such ... delinquency case, the juvenile probation officer shall notify the local office of the department of health and human resources and the division of juvenile services at least five working days before the court proceeding in order to allow the multidisciplinary treatment team to convene and develop a comprehensive individualized service plan for the child[.]"

plinary treatment planning process, and the West Virginia Department of Health and Human Resources is required to convene and direct treatment teams for juveniles involved in delinquency proceedings when the court is considering placing the juvenile out-of-home at the expense of the West Virginia Department of Health and Human Resources, or when the court is considering placing the juvenile in the custody of the West Virginia Department of Health and Human Resources. In the current cases, the circuit court placed both juveniles out-of-home at the WVDHHR's expense, and further gave the WVDHHR custody of the juveniles. It follows that the mandatory language of W. Va.Code § 49–5D–3 applied, and a multidisciplinary treatment planning process was required prior to placement.

Notably, the JPO "shall notify the local office of the [WVDHHR] ... at least five working days before the court proceeding in order to allow the multidisciplinary treatment team to convene and develop a comprehensive individualized service plan for the child: Provided, That such notice is not required in cases where the child is already in state custody[.]" W. Va.Code § 49–5D–3(a)(2). Brandon was already in state custody; therefore, the five-day notice requirement did not apply to his case. JaQuin was not in custody; however, the WVDHHR had no knowledge of the juvenile proceedings until after the hearings were over and the child had already been placed. Clearly, the mandatory notice language was not followed.

The appellees use the notice provision to suggest that the requirement of a mandatory multidisciplinary treatment planning process is waived when the child is in custody, as was Brandon's case. However, such a construction would overlook the clear statutory language that states: "*notice* is not required in cases where the child is already in state custody[.]" W. Va.Code § 49–5D–3(a)(2) (emphasis added). The statute only exempts the five-day notice requirement when the child is in custody, and does not waive the

requirement of a mandatory multidisciplinary treatment planning process in any circumstance.

Notwithstanding the clear statutory mandates and this Court's prior recognition of those mandates, neither Brandon nor JaQuin received a multidisciplinary treatment planning process prior to placement. By failing to follow the mandates, the circuit courts prevented the WVDHHR from complying with its mandated role in the juveniles' dispositions. We note the appellees' argument that the dispositions were in the best interests of the juveniles, and that they were entered into by agreement of the parties; therefore, they claim, the rights of the juveniles were protected, and neither juvenile objected to the disposition. However, agreements by the parties cannot supersede the mandatory provisions of the statute. In a delinquency proceeding, before a juvenile can be placed out-of-the-home at the WVDHHR's expense, and before a juvenile can be placed in the custody of the WVDHHR, a multidisciplinary treatment planning process must be convened. Neither child received the benefit of the mandatory language of the statute.[7]

### IV.

### CONCLUSION

Accordingly, we conclude that a multidisciplinary treatment planning process was required to be convened in each juvenile's case, and, therefore, reverse the circuit courts decisions. Because the juveniles have already successfully completed their placements, we decline to remand their individual cases for imposition of the required treatment plan. For the foregoing reasons, we reverse the orders of the Circuit Court of Brooke County and the Circuit Court of Berkeley County.

Reversed.

---

7. We are cognizant of the appellees' concern that the multidisciplinary planning treatment process can lengthen the duration of juvenile proceedings. Recognizing that the purpose of the treatment process is to assist, not hinder, the juvenile proceedings, and further recognizing the number

of individuals involved with potential scheduling issues, we point out that nothing in the statute prevents telephone participation in meetings. Significantly, in a case where all parties are in agreement as to placement, there is no need for a long and protracted treatment planning process.