# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re*: **S.H.,**
**An Alleged Protected Person**

**No. 15-0626** (Mercer County 13-G-8)

**FILED**

**April 12, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner S.H., by counsel David B. Kelley, appeals the Circuit Court of Mercer County's June 5, 2015, order denying her motion for relief from judgment under Rule 60(b) of the West Virginia Rules of Civil Procedure.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel C. Carter Williams, filed its response in support of the circuit court's order and a supplemental appendix. On appeal, petitioner alleges that the circuit court erred in denying her motion because she wishes to be returned to her mother's care.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In January of 2013, the DHHR filed a petition for appointment of a guardian/conservator on petitioner's behalf. The petition was supported by an evaluation by psychologist Chester T. Frethiem, which indicated that petitioner was readmitted to Princeton Community Hospital on January 24, 2013, because of a decline in her medical condition that was partly attributable to the fact that petitioner and her mother did not follow up with medical care after petitioner's previous hospitalization. Two months prior, petitioner was admitted to the hospital and diagnosed with a urinary tract infection, decubitus ulcers, and superimposed infection. Petitioner was treated and returned to her mother's care, but no follow up occurred until her hospitalization in January of 2013. At the time of her readmission, petitioner presented with an upper respiratory infection, pneumonia, sepsis, left side pneumothorax, dehydration, multiple decubitus ulcers, MRSA, a lower-extremity deep vein thrombosis, and a history of multiple sclerosis. Petitioner was admitted to the ICU and she required a peripherally inserted central catheter line for the administration of long-term antibiotics. According to the DHHR's petition, petitioner refused medical care and treatment recommended by the hospital internist, Dr. Yoginder Yadav.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

According to Dr. Frethiem, petitioner suffered from dementia associated with multiple sclerosis, which resulted in a severe impairment of her higher level cognitive functions. Dr. Frethiem also noted that petitioner, with her mother's support, refused important aspects of her medical care, and further that petitioner's mother "does not appear capable of understanding [petitioner's] medical condition or ensuring that she gets proper care." As such, Dr. Frethiem opined that petitioner lacked capacity and was in need of a guardian and conservator. Dr. Yadav also completed an evaluation based upon his examinations and determined that petitioner lacked capacity and required the appointment of a guardian and conservator. Dr. Yadav also determined that petitioner required twenty-four hour, skilled nursing care to manage her health issues and physical therapy. Based upon their observations, both doctors determined that petitioner lacked insight into her medical conditions and was not competent to make her own medical decisions. By order entered on January 29, 2013, the circuit court appointed the DHHR as petitioner's temporary guardian and the Sheriff of Mercer County as petitioner's temporary conservator.

The mental hygiene commissioner held a final hearing on the DHHR's petition in February of 2013. According to testimony from a DHHR employee, petitioner's mother brought her by bus to the hospital in January of 2013 in critical condition. Additionally, petitioner presented with sixteen bed sores, was in need of a chest tube as a result of a pneumothorax derived from a central line being put in place, and her clothes were soaked in urine. The DHHR worker further testified that both petitioner and her mother refused to permit staff to change petitioner's clothes, change the dressing on her bed sores, or insert the chest tube. Despite clear testimony regarding petitioner's diagnosis upon admission, petitioner's mother testified that the bed sores were the result of petitioner's prior hospitalization. Both petitioner and her mother testified that they did not need assistance with petitioner's care and that petitioner was capable of making her own decisions. Ultimately, by order entered on February 21, 2013, the circuit court appointed the DHHR as a limited guardian for petitioner and deemed a conservator unnecessary due to petitioner's only income being derived from monthly government benefits.

The mental hygiene commissioner held a review hearing in May of 2013. During the hearing, a representative of Mercer Nursing and Rehabilitation ("facility") testified that when petitioner arrived at the facility, she had eighteen bed sores. According to the employee, at the time of the hearing, petitioner still had ten bed sores that had not yet healed. Testimony further established that petitioner had three very serious infections in a number of the wounds that would take several weeks to resolve. This employee also testified that petitioner did well during a short period when her mother's visits were suspended, but that after visitation resumed, petitioner refused to get up or eat. Ultimately, the facility had to utilize a feeding tube to supply petitioner nutrition. At the conclusion of this hearing, the circuit court appointed the DHHR as a full guardian for petitioner.

The DHHR filed a periodic report in February of 2014, and noted that petitioner continued to require a guardian because of her risk of falling, the nature and extent of her pressure ulcers and future ulcer development, decrease of mobility, bowel incontinence, poor oral intake, nutritional problems, and the presence of a feeding tube. The DHHR also indicated petitioner's mother interfered with petitioner's medical treatment and that petitioner followed the mother's directions instead of the staff's. Specifically, the DHHR reported that when petitioner's mother was present, petitioner refused to do anything but lie in bed.

In August of 2014, petitioner filed a petition to terminate the guardianship and argued that she was no longer in need of a guardian. In September of 2014, the mental hygiene commissioner held a hearing on the issue, during which petitioner testified that the DHHR limited her contact with her mother to thirty minutes by phone daily and visitation three days weekly for two hours and forty-five minutes. Testimony from employees of the DHHR and the facility established that the phone call restriction was necessary because petitioner's mother attempted to make as many as forty-five phone calls to petitioner each day. Eventually, staff made special arrangements to take the phone to petitioner at a specific time every day so that she could talk to her mother for thirty minutes. Testimony established that the time limit was necessary since all residents share one phone. Testimony also established that petitioner's mother once had unlimited visitation with petitioner, but that her disruption of petitioner's services necessitated a visitation schedule. This included the mother interfering with petitioner's eating, medicine administration, and disruption of other activities. According to additional testimony, petitioner's mother would come to the facility and obtain petitioner's money, but would then fail to purchase requested items. The facility remedied this situation by preventing petitioner's mother from accessing her account and having the facility's activity department purchase the items petitioner wanted from a list she prepared. According to testimony, petitioner's mother once came to the facility, took items the facility purchased for petitioner, and attempted to return them to Wal-Mart for cash. At the conclusion of this hearing, the mental hygiene commissioner ordered the DHHR remain petitioner's guardian. Also, at the request of petitioner's facility, the commissioner ordered that petitioner undergo an additional psychological evaluation.

In December of 2014, the mental hygiene commissioner held a hearing on the petition to terminate guardianship, during which petitioner again testified that she wished to be in control of her medical decisions and that she believed her mother could take care of her. Petitioner indicated that she would remain in the facility until her wounds healed and that her mother secured a sufficient place for her to live. Personnel from petitioner's facility also testified as to the care petitioner required. This included crushing certain of petitioner's medications and administering them through a feeding tube; changing petitioner several times per day; cleaning petitioner's wounds and dressing them daily; and turning petitioner every two hours, among other requirements. Personnel also testified about continued problems with petitioner's mother interfering with petitioner's care. According to testimony, petitioner's mother scheduled an appointment with a physician to have petitioner's feeding tube removed. However, the facility's physician intervened and cancelled the surgery. Testimony also established that petitioner weighed 77 pounds when she arrived at the facility, but weighed 138 pounds as of the date of the hearing. According to one staff member, petitioner's mother was not capable of taking care of petitioner, as evidenced by the fact that she tried to convince petitioner not to take her medicine or eat. The DHHR concurred with this opinion. At the conclusion of this hearing, the DHHR was ordered to remain as guardian for petitioner, but to transition petitioner back into her mother's home. Petitioner's mother was ordered to cooperate with and allow any outside agency worker into the home at any time and to abide by all of the doctor's orders regarding medication, petitioner's feeding tube, and other medical opinions.

In March of 2015, the mental hygiene commissioner held a final hearing on the petition to terminate guardianship, during which personnel from petitioner's facility testified as to the

mother's training. According to testimony, petitioner still had a stage four pressure wound that had to be cleaned and dressed twice a day. Facility employees testified that petitioner's mother stated that she could not properly clean and dress this wound and was reluctant to participate in training. A facility employee also testified to concerns that the mother would not comply with the prescribed care for petitioner, including a concern that the mother would not turn petitioner to alleviate the pressure sores if petitioner requested. Staff also testified that the mother did not want petitioner to have a feeding tube, having remarked that petitioner was "getting fat," and that petitioner would deteriorate without the tube. Ultimately, the mental hygiene commissioner found that petitioner was unable to exercise the essential requirements for her health, care, safety, habitation, or therapeutic needs without the existence of a guardian. The commissioner also ultimately decided that the mother could not care for petitioner in her home. The resulting order directed the DHHR to remain as petitioner's guardian and noted that the guardian's powers did not extend beyond what was absolutely necessary for petitioner's protection. The circuit court entered this final order on March 27, 2015. Petitioner did not appeal this order to this Court.

In April of 2015, petitioner filed a petition for appeal in the circuit court challenging the circuit court's March 27, 2015, order. The circuit court noted, however, that it cannot hear an appeal of its own order. As such, the circuit court treated the petition as a motion for relief from judgment under Rule 60(b) of the West Virginia Rules of Civil Procedure because the petition was filed thirty days after the entry of the order at issue. In June of 2015, the circuit court held a hearing on the motion for relief from judgment and ultimately denied petitioner relief. It is from this order that petitioner appeals.

The Court has previously established the following standard of review:

> "A motion to vacate a judgment made pursuant to Rule 60(b), W.Va.R.C.P., is addressed to the sound discretion of the court and the court's ruling on such motion will not be disturbed on appeal unless there is a showing of an abuse of such discretion." Syl. Pt. 5, *Toler v. Shelton*, 157 W.Va. 778, 204 S.E.2d 85 (1974).

Syl. Pt. 4, *Rose v. Thomas Memorial Hosp. Found., Inc.*, 208 W.Va. 406, 541 S.E.2d 1 (2000). Moreover, we have held that

> "[i]n reviewing an order denying a motion under Rule 60(b), W.Va.R.C.P., the function of the appellate court is limited to deciding whether the trial court abused its discretion in ruling that sufficient grounds for disturbing the finality of the judgment were not shown in a timely manner." Syl. Pt. 4, *Toler v. Shelton*, 157 W.Va. 778, 204 S.E.2d 85 (1974).

*Id.* at 408, 541 S.E.2d at 3, Syl. Pt. 3. Finally, "'[a]n appeal of the denial of a Rule 60(b) motion brings to consideration for review only the order of denial itself and not the substance supporting the underlying judgment nor the final judgment order.' Syl. Pt. 3, *Toler v. Shelton*, 157 W.Va. 778, 204 S.E.2d 85 (1974)." *Id.* at 407, 541 S.E.2d at 2, Syl. Pt. 2. Upon our review, the Court finds no error in the circuit court denying petitioner's motion for relief from judgment.

Pursuant to Rule 60(b) of the West Virginia Rules of Civil Procedure, a party may move for relief from a judgment for one of several reasons, including, but not limited to, mistake, inadvertence, excusable neglect, unavoidable cause, newly discovered evidence, or fraud. On appeal to this Court, however, petitioner does not assert that the circuit court erred in denying her motion for relief from judgment because of the presence of any specific factor set forth in this rule. Instead, she argues in support of her assertion that the circuit court erred in allowing the DHHR to continue as her legal guardian by order entered on March 27, 2015, which order is not currently on appeal. Further, the record is clear that the circuit court did not abuse its discretion in denying petitioner's motion for relief from judgment because petitioner provided no evidence that she was entitled to such relief under the specific circumstances set forth in Rule 60(b). Instead, petitioner simply sought to relitigate the issue of whether she required a guardian to ensure she received proper medical care.

In addressing Rule 60(b) motions, this Court has stated that

> "[i]n establishing the bounds of such motion, the weight of authority supports the view that Rule 60(b) motions which seek merely to relitigate legal issues heard at the underlying proceeding are without merit." *Powderidge Unit Owners Ass'n v. Highland Properties, Ltd.*, 196 W.Va. 692, 705, 474 S.E.2d 872, 885 (1996).

*Id.* at 414, 541 S.E.2d at 9. In support of her Rule 60(b) motion, petitioner simply realleged that she was capable of making her own medical decisions and that her mother was able to care for her. However, petitioner also alleged that her lawyer and the circuit court lied to her in that, at a prior hearing, the circuit court ordered a gradual transition back into her mother's home, while at the final hearing the circuit court ordered that the DHHR remain petitioner's guardian. This allegation, however, does not arise to fraud or mistake as contemplated by Rule 60(b). Instead, it is clear that the circuit court initially sought to honor petitioner's wishes but was unable to ultimately provide for petitioner's return to her mother's home because of issues that arose during the mother's training in the proper care for petitioner. As such, we find no abuse of discretion in the circuit court denying petitioner's motion for relief from judgment.

For the foregoing reasons, we find no error in the decision of the circuit court, and its June 5, 2015, order is hereby affirmed.

Affirmed.

**ISSUED**: **April 12, 2016**

**CONCURRED IN BY**:

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis

Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II