# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re*: **Involuntary Hospitalization of S.C.**

**No. 16-1149**

**FILED**

**September 25, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner S.C., by counsel C. Joan Parker, appeals the November 10, 2016, order of the Mental Hygiene Commissioner of Kanawha County ("Commissioner") committing him to a psychiatric hospital upon a finding of probable cause that petitioner was likely to harm himself or others.[1] The State of West Virginia, by counsel Andrew S. Dornbos, filed its response in support of the Commissioner's order. On appeal, petitioner argues that the Commissioner failed to consider all relevant and reliable evidence before ruling that petitioner was mentally ill, drug addicted, and likely to cause harm to himself or others.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Commissioner's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On November 10, 2016, petitioner's mother filed an "Application for Involuntary Custody for Mental Health Examination." Petitioner's mother stated that she believed petitioner to be addicted to alcohol and mentally ill. The bases for her belief included the facts that petitioner had stopped going to work and "started preparing for the defeat of the government." Petitioner's mother asserted that he had purchased a gun and was having delusions, including one in which he stated that, while driving, "cars magically appeared around [petitioner] and recruited him to work for Trump." She further asserted that petitioner drank beer all day, stopped taking his antidepressant, and was not sleeping or eating.

On that same date, petitioner was evaluated by James W. Merrill, MA, who filed a "Certificate of Licensed Examiner" after the evaluation. Mr. Merrill found reason to believe that petitioner was mentally ill, addicted, and likely to cause harm to himself due to his mental illness and addiction. Mr. Merrill found that petitioner abused cannabis and alcohol and had, in fact, been arrested for driving under the influence the night before his evaluation. Mr. Merrill also

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.,* 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.,* 183 W.Va. 641, 398 S.E.2d 123 (1990).

1

documented that petitioner had stopped taking his antidepressant medication. Mr. Merrill diagnosed petitioner with mood disorder, unspecified; alcohol use disorder; cannabis use disorder; and noncompliance with treatment. Mr. Merrill concluded that petitioner had a "moderate probability of SHB [seriously harmful behavior]" and was in need of "[i]mmediate hospitalization in a 24-hour locked facility[.]"

Shortly after petitioner's evaluation, a probable cause hearing was held. Mr. Merrill, petitioner's mother, petitioner's sister, and petitioner's fiancé testified in support of involuntary hospitalization. Mr. Merrill testified consistently with the information presented in his "Certificate of Licensed Examiner" and added that he was "concerned about if, in fact, he did buy an assault rifle and he's using drugs and alcohol and may be delusional . . . . That's not a good combination, so."

Petitioner's mother testified to petitioner's change in behavior and "that it's like there was a disconnect from reality[.]" She testified that petitioner was "defiant and just . . . one of those people that thinks everything is a conspiracy" and that petitioner stated he "had been somewhere and these cars surrounded him and they were recruiting him for Trump." She testified that petitioner's daughter confided in her that "she loves [petitioner] and thinks he needs help but she's starting to be afraid of him" and to be around him. Petitioner's mother was unaware "until yesterday that he smoked pot six days a week," but she testified that "[i]f [petitioner is] awake he's got a beer in his hand" and that "it's one beer after another."

Petitioner's sister testified that she saw him a few days prior to the probable cause hearing, "[a]nd he was not himself at all, he was – what I would as manic [sic]." After leaving the home at which she saw petitioner and at which she left her own children to have a sleepover with petitioner's child, she said "I almost turned around and went and got my kids because I was scared, but I didn't. Because I knew they wanted to spend the night with his daughter[.]" She also testified that petitioner had "two large guns that I did see with my eyes, at the house." Petitioner purportedly told her that "he was stockpiled with his stuff for when this happened." Petitioner's sister testified that petitioner has not been to work and simply stopped going:

> He didn't tell work he wasn't coming. He just stopped going. And he was so happy to get this job. He's been trying for years to get this job. And he just recently got it and now he just stopped going because of all this stuff, and he didn't tell anybody that he was going to not go.

Petitioner's sister also recounted that petitioner told her

> he was in a high speed chase and that he passed the test. And so he was going to be recruited to work for the government to protect Donald Trump. And that he was just waiting for them to come and get him. And he was so excited. He kept asking people, "Are you in on it?" "Are you in on it?" And we were like "In on what?"

Petitioner further told her that "when you buy high powered rifles that shot [sic] a mile away, then they know that you're serious and you can protect the government."

Petitioner's fiancé testified to hearing petitioner talk to himself. She said she "could hear him from the bedroom, it wasn't – I thought somebody was in there with him. And he told me he was just talking to himself[.]" Petitioner's fiancé testified that petitioner purchased a deer rifle and that, at first, she was not concerned about this purchase or his purchase of ammunition. However, she felt that his preparation "started, I think, it just got to the extreme. He said something once that, . . . if it came down to it, . . . he would have to go and . . . defend the country and . . . shoot Hilary [sic], if they needed him to." At this point during the hearing, petitioner interjected and clarified that he told her that he would defend the Constitution of the United States, not that he would shoot Hillary Clinton.

Petitioner testified on his own behalf. He testified to having recently purchased a new gaming system that has technology that allows him to communicate with other gamers over a headset. He also testified that certain clubs he mentioned joining were retail loyalty clubs for Cabela's and Books-A-Million.

The Commissioner found that petitioner's testimony explained some of the witnesses' testimony but that "what's going on goes beyond that. When I look at the totality of the testimony, I think there's something going on that needs to be addressed, and that needs to be addressed psychiatrically." Thus, the Commissioner entered her "Order: Probable Cause for Involuntary Hospitalization." It is from this order that petitioner appeals.

This Court has held that "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." W.Va. R. Civ. P. 52(a). Furthermore,

> [a] finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.

Syl. Pt. 1, in part, *In re: Tiffany Marie S.*, 196 W.Va. 223, 225, 470 S.E.2d 177, 179 (1996). Finally, "[a]n appellate court may not decide the credibility of witnesses or weigh evidence as that is the exclusive function and task of the trier of fact." *State v. Guthrie*, 194 W.Va. 657, 669, 461 S.E.2d 163, 175 (1995).

On appeal, petitioner argues that the Commissioner failed to consider all relevant and reliable evidence prior to ruling that he was mentally ill, addicted, and a danger to himself. "'Mental illness' means a manifestation in a person of significantly impaired capacity to maintain acceptable levels of functioning in the areas of intellect, emotion and physical well-being." W.Va. Code § 27-1-2. Petitioner maintains that his diagnoses of alcohol use disorder, cannabis use disorder, and noncompliance with treatment do not amount to significant impairment. He also argues that simply being charged with driving under the influence does not

amount to an addiction.

"Addiction" is defined as

a maladaptive pattern of substance use leading to clinically significant impairment or distress as manifested by one or more of the following occurring within thirty days prior to the filing of the petition:

(1)     Recurrent substance use resulting in a failure to fulfill major role obligations at work, school or home, including, but not limited to, repeated absences or poor work performance related to substance use; substance-related absences, suspensions or expulsions from school; or neglect of children or household;

(2)     Recurrent use in situations in which it is physically hazardous, including, but not limited to, driving while intoxicated or operating a machine when impaired by substance use;

(3)     Recurrent substance-related legal problems; or

(4)     Continued use despite knowledge or having persistent or recurrent social or interpersonal problems caused or exacerbated by the effects of the substance.

*Id.* at § 27-1-11(a).

Petitioner also contends that the evidence presented does not establish a likelihood of causing harm. Under West Virginia Code § 27-1-12,

"[l]ikely to cause serious harm" means an individual is exhibiting behaviors consistent with a medically recognized mental disorder or addiction, excluding, however, disorders that are manifested only through antisocial or illegal behavior and as a result of the mental disorder or addiction:

(1)     The individual has inflicted or attempted to inflict bodily harm on another;

(2)     The individual, by threat or action, has placed others in reasonable fear of physical harm to themselves;

(3)     The individual, by action or inaction, presents a danger to himself, herself or others in his or her care;

(4)     The individual has threatened or attempted suicide or serious bodily harm to himself or herself; or

(5)     The individual is behaving in a manner as to indicate that he or she is unable, without supervision and the assistance of others, to satisfy his or her need

4

for nourishment, medical care, shelter or self-protection and safety so that there is a substantial likelihood that death, serious bodily injury, serious physical debilitation, serious mental debilitation or life-threatening disease will ensue unless adequate treatment is afforded.

Here, the record reveals sufficient evidence for the findings that petitioner was mentally ill, addicted, and likely to cause harm to himself or others. Mr. Merrill found as such and based his conclusions on petitioner's delusions, recent purchase of a firearm, discussions concerning the "end of time," and recent arrest for driving under the influence. Mr. Merrill concluded that petitioner's addiction and mental illnesses rendered petitioner unable to meet his needs for safety and self-protection. Petitioner's family members also testified to his delusions about being recruited to work for President Trump, and they expressed concern over his recent firearm purchase. Petitioner attempts to downplay this evidence by asserting that many Americans purchased guns leading up to the 2016 election and experienced anxiety over the election. He also argues that several of the clubs he mentioned having joined were retail loyalty clubs, and he attributes the testimony concerning his delusions to his use of virtual reality on his new gaming system. But the Commissioner weighed petitioner's testimony against that of Mr. Merrill and petitioner's family members and found petitioner's testimony to be less credible. As a result, we find that the Commissioner's findings concerning petitioner's mental illness and likelihood of causing harm were not clearly erroneous.

Similarly, petitioner's challenge to the Commissioner's finding that he was addicted ignores the evidence presented by Mr. Merrill and his family members that he drinks alcohol daily, smokes cannabis six days per week, and has stopped going to work. Petitioner also ignores the fact the he himself acknowledged his substance abuse issues. When asked whether alcohol or any drug interferes with his life, petitioner responded, "Well, alcohol is going. I'm getting rid of the alcohol. I'm done with it. I can't do the same thing over and over, that's insanity." For these reasons, the Commissioner's findings of addiction and likelihood of causing harm were not clearly erroneous.

For the foregoing reasons, we affirm the Commissioner's November 10, 2016, order committing petitioner to a psychiatric hospital upon a finding of probable cause that he was likely to harm himself or others.

Affirmed.

**ISSUED**:  September 25, 2017


**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker