# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **D.B., J.B., and P.B.**

**No. 21-0812** (Kanawha County 20-JA-410, 20-JA-411, and 21-JA-311)

## MEMORANDUM DECISION

Petitioner Mother B.B., by counsel Edward L. Bullman, appeals the Circuit Court of Kanawha County's September 13, 2021, order terminating her parental rights to D.B., J.B., and P.B.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Brittany N. Ryers-Hindbaugh, filed a response in support of the circuit court's order. The guardian ad litem, Jennifer N. Taylor, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights without affording her additional time under an improvement period to correct the issues of abuse and neglect.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In August of 2020, the DHHR filed a petition alleging that petitioner abused and neglected D.B. and J.B. According to the DHHR, petitioner had a substance abuse problem and left the children with inappropriate caretakers. Petitioner permitted J.B. to reside with the child's maternal grandmother. When observing the maternal grandmother's home, the DHHR worker found "roaches crawling on the ceiling, every wall, the floor, and on all of the belongings in the apartment." Additionally, J.B. displayed signs of cockroach bites and was "very unclean." As for D.B., the DHHR alleged that the child was permitted to stay in the custody of a caretaker with a substantiated history of drug abuse and inadequate housing, as the home had previously been found

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

to be "a dirty, unsafe environment with trash and bugs crawling throughout the house." During the DHHR's investigation, petitioner admitted to abusing heroin and having recently overdosed. The DHHR also alleged that petitioner had a history of referrals, including a referral upon J.B.'s birth due to the child being born drug-exposed. Based on these facts, the DHHR alleged that petitioner abused and neglected the children.

Following the petition's filing, petitioner waived her right to a preliminary hearing. At that time, the court ordered petitioner to submit to drug screens and permitted petitioner to participate in visitation with the children upon producing clean drug screens. The court also ordered that petitioner would receive services to address her mental health issues.

In October of 2020, petitioner stipulated to the allegations against her, including that she abused substances and failed to provide the children with proper care. The court accepted the stipulation and adjudicated petitioner of abusing and neglecting the children. At that time, petitioner moved for a post-adjudicatory improvement period, but the court held the motion in abeyance until a hearing in December of 2020. At that point, petitioner had been compliant with services and was participating in a medication-assisted substance abuse treatment program. Based on these facts, the DHHR recommended that the court grant petitioner's motion. Ultimately, the court granted petitioner a post-adjudicatory improvement period.

According to a court summary from January of 2021, petitioner informed the DHHR that she remained in a relationship with D.B.'s father, despite a recent episode of domestic violence between the two. The court summary also raised concerns over petitioner's lack of progress, including the fact that her provider was unable to contact her on multiple occasions and her continued lack of employment and suitable housing. In March of 2021, the DHHR recommended that the improvement period continue, with the requirement that petitioner obtain housing and employment. The court permitted petitioner's improvement period to continue, but directed that petitioner obtain employment.

Thereafter, petitioner gave birth to P.B., and the DHHR filed an amended petition in regard to that child in May of 2021. According to the DHHR, P.B. was admitted to the NICU upon birth because of severe health issues, and petitioner tested positive for Suboxone upon admission as a result of her continued participation in medication-assisted treatment. The following month, the DHHR recommended termination of petitioner's parental rights. According to the DHHR, employment and housing had been requirements of petitioner's case plan since August of 2020. Despite this requirement, petitioner had been evicted from her residence and was currently living in a motel with her mother, who was previously found to be an inappropriate caregiver and from whose home J.B. was initially removed. The DHHR also introduced evidence that petitioner had been compliant with services until May of 2021, at which time her provider was unable to locate her. The DHHR noted, however, that petitioner reinitiated contact prior to the hearing. The DHHR also indicated that petitioner's visits with the children had been suspended because she "brought bugs into the visits, resulting in the children returning to their foster homes covered in bugs and bites." Additionally, the DHHR reported that the result of petitioner's psychological evaluation was a "poor" prognosis, given her "lack of responsibility, housing, history of drug use, and unemployment." Petitioner testified to her ongoing substance abuse treatment and explained that her housing issue was compounded by a balance she owed on her prior residence. Petitioner

indicated that she was employed at the time and was working to have her balance paid off so she could be approved for public housing. Petitioner requested that the court grant her additional time to correct the issues of abuse and neglect. Ultimately, the court permitted petitioner's improvement period to continue. The court also adjudicated petitioner as an abusing parent in regard to the amended petition addressing P.B.

In August of 2021, the court held a dispositional hearing, during which a DHHR worker requested the termination of petitioner's parental rights because of her failure to fully comply with services, obtain any benefit from the services, or demonstrate any motivation to improve the conditions of abuse and neglect. The witness elaborated that petitioner avoided her service providers, resulting in her inconsistent participation. According to the DHHR employee, petitioner failed to meet the requirements of her improvement period, despite it having been ongoing since December of 2020. The witness also testified that petitioner still did not have suitable housing and failed to provide the DHHR with proof of employment. Further, the witness explained that petitioner would often discuss the case with the children and "blamed the provider for her failures." The DHHR employee testified that she saw no significant progress from petitioner.

One of petitioner's service providers testified that petitioner was initially compliant, "but then quit." According to the provider, petitioner failed to appear for scheduled services and provided various excuses. The provider testified that she offered to help petitioner obtain placement in a homeless shelter, but petitioner refused the assistance. The provider stressed that petitioner was required to obtain appropriate housing, but had been evicted from the motels where she stayed. The provider also explained that petitioner did not benefit from classes because she did not apply the lessons to her life.

Petitioner testified and indicated that she voluntarily quit her job three weeks prior to the hearing. Petitioner also testified that she applied for public housing and was on a waiting list. Petitioner further denied having avoided her providers, but did blame one provider for her own failures.

Ultimately, the court found that the evidence established that petitioner was unwilling or unable to provide adequately for the children. Specifically, the court found that petitioner failed to cooperate with the DHHR and the services offered, failed to obtain housing or employment, did not benefit from services, and failed to take responsibility for her actions. The court also found that petitioner's testimony, including her claims of attempting to comply with services and obtain housing and employment, was not credible. The court then found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect and that termination of her parental rights was necessary for the children's welfare. As such, the court terminated petitioner's parental rights.[2] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

---

[2]The fathers' parental rights were also terminated below. The permanency plan for the children is adoption in their current foster homes.

3

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that it was error to terminate her parental rights because she corrected her substance abuse problem and simply needed additional time to remedy other issues, such as her lack of housing and employment. The main focus of petitioner's argument is that she should have been entitled to "additional time in [a post-]dispositional improvement period after she demonstrated her ability to comply [with] and successfully complete the terms and conditions of an improvement period." However, petitioner has failed to establish that she filed a written motion for a post-dispositional improvement period, a prerequisite for entitlement to the same. As this Court recently held, "[a] circuit court may not grant a[n] . . . improvement period under W. Va. Code § 49-4-610 . . . unless the respondent to the abuse and neglect petition files a written motion requesting the improvement period." Syl. Pt. 5, *State ex rel. P.G.-1 v. Wilson*, -- W. Va. --, -- S.E.2d --, 2021 WL 5355634 (2021). Indeed, West Virginia Code § 49-4-610(3), governing post-dispositional improvement periods, requires a parent to file a written motion in order to obtain an improvement period. As petitioner has failed to cite to the record to show that she moved for a post-dispositional improvement period, in violation of Rule 10(c)(7) of the Rules of Appellate Procedure, she cannot be entitled to relief in this regard.

The remainder of petitioner's argument before this Court can be resolved on the undisputed fact that she had not corrected the conditions of abuse and neglect at the time of disposition and was not reasonably likely to correct the conditions in the near future. On appeal, petitioner asserts that she successfully complied with services and "demonstrated that she could solve the biggest issue, her substance abuse problem." This argument, however, ignores several key pieces of evidence and findings from the proceeding below.

The first is that the record shows that petitioner was not fully compliant with services and, in fact, ceased her compliance as the proceedings progressed. As early as January of 2021, the DHHR expressed concern over a service provider's inability to contact petitioner. Further, at a hearing in June of 2021, the DHHR indicated that petitioner's compliance ceased in May of 2021, at which point the DHHR was unable to locate petitioner for a period. By the dispositional hearing in August of 2021, the DHHR presented evidence that petitioner avoided her service providers and failed to obtain any benefit from the services she did participate in. In the words of the provider,

petitioner simply "quit" during the improvement period. As such, we refuse to accept petitioner's assertion that she complied with the services offered below.

It is also important to note that petitioner's refusal to accept responsibility for her abusive and neglectful conduct ultimately resulted in making those issues untreatable. *In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) ("Failure to acknowledge the existence of the problem . . . results in making the problem untreatable . . . ."). As set forth above, the court found that petitioner failed to take responsibility for her actions, as evidenced by testimony that petitioner refused to acknowledge these conditions and blamed a provider for her shortcomings. Instead of applying the lessons she learned during her services, petitioner chose to blame others, thereby demonstrating her inability to correct the conditions of abuse and neglect through rehabilitative services. These facts completely undermine petitioner's assertion on appeal that she simply needed additional time to correct the conditions of abuse and neglect.

In support of her lone assignment of error, petitioner repeatedly stresses her participation in substance abuse treatment and her negative screens during the proceedings. While laudable, this was insufficient to entitle her to reunification with the children. In fact, the record is clear that substance abuse was not the only issue petitioner needed to correct. Instead, it was also the conditions of inappropriate housing that she subjected the children to prior to removal and failed to mitigate in any regard during the proceedings. While it may be true that petitioner decided to subject the children to these conditions because of her substance abuse, the fact remains that the condition of abuse and neglect that most impacted the children was their presence in inappropriate homes. Not only did petitioner fail to address this issue, but she moved into a motel with her mother at one point, despite the fact that it was her mother's home from which J.B. was initially removed. Petitioner's willingness to live with an individual who subjected J.B. to such conditions only underscores her inability to benefit from services, her testimony that she recognized her mother was an inappropriate caregiver notwithstanding.

Further, the record shows that petitioner's situation was not one of a simple financial inability to afford appropriate housing, but rather a willful refusal to accept assistance from the DHHR. A provider testified that she attempted to secure petitioner placement in a shelter, but that petitioner refused. Further, the provider testified that petitioner refused to identify the individual with whom she was residing. As such, it is clear that petitioner did not fully cooperate with the DHHR in an attempt to remedy this issue. Petitioner also makes much of the fact that she attempted to obtain employment and claims that her pregnancy with P.B. hampered her opportunities, while ignoring the fact that she ultimately admitted to voluntarily quitting her job shortly before the dispositional hearing. Contrary to petitioner's assertion that she was "doing what she could under the circumstances," the record shows that petitioner was unwilling to take steps to correct these issues. Petitioner's arguments on appeal reject the reality of the evidence, which demonstrated that she made no real progress in her services and was unlikely to remedy the conditions of abuse and neglect in the near future.

Ultimately, the circuit court found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that termination of her parental rights was necessary to protect the children, the two findings necessary

to terminate parental rights according to West Virginia Code § 49-4-604(c)(6). As set forth above, the evidence overwhelmingly supports these determinations. Further, we have held as follows:

> "[C]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements." Syl. Pt. 1, in part, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4. As such, we find no error in the termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 13, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: April 14, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice Alan D. Moats sitting by temporary assignment