**STATE OF WEST VIRGINIA**

**FILED**

**October 19, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* C.W., T.W., A.W., and J.W.-1

No. 18-0416 (Randolph County 2017-JA-010, 011, 012, and 2018-JA-012)

## MEMORANDUM DECISION

Petitioner Mother J.W.-2, by counsel J. Brent Easton, appeals the Circuit Court of Randolph County's April 17, 2018, order terminating her parental rights to C.W., T.W., A.W., and J.W.-1.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Heather M. Weese, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in finding that she did not successfully complete her improvement period.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In January of 2017, the DHHR filed a petition alleging that petitioner and the father abused controlled substances in the home and that A.W. was born drug-exposed. In addition, the DHHR alleged that petitioner's home lacked essential utilities, such as water and sewage. In February of 2017, the DHHR filed an amended petition alleging that petitioner and the father tested positive for methamphetamine and amphetamine in addition to their buprenorphine. Later that month, petitioner stipulated to the allegations of abuse and neglect. Petitioner moved for a

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Additionally, because petitioner and a child share the same initials, we refer to them as J.W.-2 and J.W.-1, respectively.

[2]Petitioner does not make a specific argument regarding the termination of her parental rights.

post-adjudicatory improvement period, and the circuit court granted that motion.[3] The circuit court held review hearings in May, July, and August of 2017 and found that petitioner and the father were compliant with services throughout that time.

In November of 2017, the circuit court held a second adjudicatory hearing on allegations of sexual abuse against the father. According to their foster mother, both T.W. and C.W., ages three and four respectively, reported sexual abuse by the father. Both children were forensically interviewed and C.W.'s interview was consistent with his prior statements to the foster mother. T.W.'s age made her difficult to interview. Following the hearing, the circuit court found that the children were sexually abused and adjudicated the father as an abusing parent.[4] Petitioner's improvement period continued and she was noted to be compliant with services.

The circuit court held a review hearing in January of 2018 and found petitioner was compliant with services. The circuit court noted that petitioner was pregnant with an expected due date in February of 2018. Additionally, due to concerns for the safety of the unborn child, petitioner was unable to discontinue her prescribed Subutex dosage. Later that month, the DHHR filed a second amended petition alleging that petitioner's child, J.W., was with drugs in the child's system. In February of 2018, petitioner stipulated to the allegations in the third amended petition and was adjudicated as an abusing parent. The circuit court continued petitioner's improvement period.

The circuit court held the final dispositional hearing in April of 2018 and heard evidence on the DHHR's motion to terminate petitioner's parental rights. A DHHR case worker testified that one of the terms for petitioner's improvement period required her to be honest with the DHHR. According to the worker, petitioner was dishonest about her pregnancy and first informed the DHHR that she was pregnant in November of 2017, just four months before she gave birth. Petitioner tested positive for methamphetamine in late October of 2017 while pregnant. Additionally, the worker testified that petitioner previously indicated she had filed for a divorce from the father. However, the divorce paperwork was not filed with the circuit clerk. Further, the worker testified that she explained to petitioner the danger of allowing the father to have contact with the children in the future and that the DHHR would not condone reunification of the children with the father. The worker explained that petitioner acknowledged and understood that directive. Despite this, petitioner continued to visit the father and encourage him during his incarceration and home incarceration. On cross-examination, the worker admitted that petitioner completed adult life skills and parenting classes, participated in visitations, remedied her housing issues, and demonstrated appropriate parenting. However, the DHHR was concerned about whether petitioner would protect the children from the father.

---

[3]Although the docketing sheet indicates that the terms of petitioner's improvement period were filed in this case, petitioner neglected to submit those documents in her appendix on appeal.

[4]The father was also charged with first-degree sexual assault and incarcerated in September of 2017.

Three additional witnesses testified regarding petitioner's continued contact with the father. First, the father's home incarceration officer testified that petitioner was present in the home when the father's equipment was installed. Further, petitioner was present in the home during the first home confinement check and the officer found ladies' clothing in the home that would have fit petitioner. Second, a DHHR worker testified that she went to that home to speak with the father and petitioner was present. According to this worker, petitioner informed her that the father was not there and that she did not know where he was. Third, a Tygart Valley Regional Jail officer testified that petitioner visited the father twenty-one times while he was incarcerated. Additionally, petitioner and the father had multiple conversations which were recorded as regular regional jail procedure. During these phone calls, petitioner informed the father she was pregnant in October of 2017, stated that the DHHR was forcing her to divorce the father, and expressed that she would get the kids back for the both of them.

Two witnesses testified regarding a forged drug screen that petitioner submitted the day before the hearing. According to these witnesses, petitioner sent her visitation provider a drug screen that indicated she was negative for drugs. However, it was discovered that petitioner changed the date of a prior drug screen and purported it to be a current screen. Petitioner admitted she forged the drug screen because she was told that no female staff members were available at the facility to conduct a drug screen that day. Yet, a rebuttal witness was called and testified that he received no phone calls from petitioner's known number that day, nor did any callers ask whether female staff was available for a drug screen.

Finally, petitioner testified that she completed all the terms of the improvement period. Additionally, she asserted that she was going to end her marriage for the safety of the children and that she filed the paperwork for divorce with the family court. Petitioner also admitted to the statements she made on the phone and that she visited the father's home three times during the week that he was released on bond, but denied that she stayed there on a continuous basis. The court checked for petitioner's divorce paperwork, but could not confirm it was filed.

Ultimately, the circuit court found that petitioner established a pattern of drug use and attempts to mislead the DHHR regarding her drug use, pregnancy, and contact with the father. Although petitioner completed multiple terms of the improvement period, the circuit court found that the lessons of those services were lost on petitioner due to her continual dishonesty. The circuit court concluded that petitioner was unsuccessful in her improvement period and that petitioner's "dishonesty [did] not give the [circuit] [c]ourt any confidence that further participation in an improvement period would be able to address the issues remaining in this matter." Accordingly, the circuit court found petitioner was unwilling or unable to provide for the children's needs and terminated her parental rights in its April 17, 2018, order. Petitioner now appeals that order.[5]

The Court has previously established the following standard of review:

---

[5]The father's parental rights were also terminated by this order. According to the parties, the permanency plan for the children is adoption in their current foster placement.

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, this Court finds no error in the proceedings below.

On appeal, petitioner argues that the circuit court abused its discretion in finding that she did not successfully complete her improvement period because she complied with the terms and conditions of the improvement period for over a year. We disagree with petitioner. On appeal, petitioner acknowledges our prior holdings that

[a]t the conclusion of the improvement period, the court shall review the performance of the parents in attempting to attain the goals of the improvement period and shall, in the court's discretion, determine whether the conditions of the improvement period have been satisfied and whether sufficient improvement has been made in the context of all the circumstances of the case to justify the return of the child[ren].

Syl. Pt. 4, *In re Faith C.*, 226 W.Va 188, 699 S.E.2d 730 (2010). Further, we have previously held that "[i]n making the final disposition in a child abuse and neglect proceeding, the level of a parent's compliance with the terms and conditions of an improvement period is just one factor to be considered. The controlling standard that governs any dispositional decision remains the best interests of the child." Syl. Pt. 4, *In re B.H.*, 233 W.Va. 57, 754 S.E.2d 743 (2014).

The circuit court did not abuse its discretion in finding that petitioner's improvement period was unsuccessful because she did not make sufficient improvement to justify the return of the children. First, petitioner continued to abuse substances despite the harm it would cause to her unborn child. Although the Subutex use was required to continue for the health of the unborn child, petitioner tested positive for methamphetamine and amphetamine in October of 2017, which was after she was aware of the pregnancy. Petitioner's drug use during her third pregnancy was the original condition of abuse and neglect alleged in the first petition and it is clear that the condition was not resolved. Second, petitioner actively misled the DHHR for her own benefit. It is clear from the record that petitioner lied about continued contact with the father, about filing for a divorce, and about drug screening. Petitioner's dishonesty completely undermined her assertions that she would act in her children's best interest. Additionally,

4

petitioner acknowledged during her testimony that honesty was a term of her case plan and it is clear that she was not honest with the DHHR. Thus, she did not comply with that term of the improvement period. Finally, the best interests of the children would not be served in petitioner's custody. The record is devoid of evidence that petitioner would protect the children from their father. In fact, there was contrary evidence that petitioner was complying in an effort to reunite the entire family, including the father. It is clear that petitioner did not recognize or chose not to believe the danger of reuniting the father with the children he sexually abused. Accordingly, we find that the circuit court did not abuse its discretion in finding that petitioner did not successfully complete her improvement period.

For the foregoing reasons, we find no error in the decision of the circuit court, and its April 17, 2018, order is hereby affirmed.

Affirmed.

**ISSUED**: October 19, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Paul T. Farrell sitting by temporary assignment
Justice Tim Armstead
Justice Evan H. Jenkins

Justice Allen H. Loughry II suspended and therefore not participating.