# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **R.M.**

**No. 18-0354** (Kanawha County 17-JA-454)

**FILED**

**November 19, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner great-grandmother A.C., by counsel Sandra K. Bullman, appeals the Circuit Court of Kanawha County's May 16, 2018, order denying her motion to intervene in the abuse and neglect matter involving R.M.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem ("guardian"), Sharon K. Childers, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in not ordering a home study and immediately placing the child with her and in denying her motion to intervene.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In October of 2017, the DHHR filed an abuse and neglect petition alleging that the child was abused and neglected due to his parents' substance abuse and domestic violence. The parents waived their preliminary hearings and stipulated to adjudication. Both parents were adjudicated as abusing parents and were granted post-adjudicatory improvement periods. Due to the domestic violence petitions between the parents, the circuit court ordered them not to have contact with each other. The child was initially placed with his great-aunt, but was removed from that home due to harassment by the mother. According to reports from a Child Protective Services ("CPS") worker, while the child was in the DHHR's custody and living in his great-aunt's home, the mother called the child's great-aunt excessively, made threatening comments to her, and drove past her house almost daily. The reports also alleged that petitioner "demands to get the child" and wanted to send the child's mother to pick the child up from the great-aunt's house. Finally, the DHHR received a report that petitioner's home was deplorable and that

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

several family members lived there. Following these reports, the child was removed from the great-aunt's home and placed in a nonrelative foster home in February of 2018.

On April 19, 2018, petitioner filed a motion to intervene, noting that she had a close relationship with the child and that he lived with her for most of his life. She also noted in her motion that she is a registered nurse, has no CPS history, and has a fit and proper home for the child. Petitioner expressed her desire for permanent placement of the child. In a case summary provided to the circuit court on April 30, 2018, the DHHR alleged that petitioner was aware of continued communication between the parents, in violation of the circuit court's no-contact order, and that petitioner encouraged the mother to lie to CPS workers and service providers.

On May 7, 2018, the circuit court held a dispositional hearing in regard to the parents' parental rights. During the hearing, both parents' parental rights were terminated. The circuit court then heard testimony regarding petitioner's motion to intervene. Evidence was presented that numerous family members lived in petitioner's home, including the child's mother; petitioner's forty-one-year-old disabled daughter; petitioner's sixteen-year-old granddaughter; and petitioner's thirty-six-year-old disabled son, his girlfriend, and their two-and-a-half-year-old son. However, petitioner testified that her son, his girlfriend, and her child had plans to move out of her home to property that petitioner owns. She also explained that, given the termination of the mother's parental rights to the child, the mother could leave petitioner's home and live with her father or with petitioner's fiancé in North Carolina. Petitioner testified that she had a "very tight bond" with the child, but that she despised the child's father and the father's family. She explained that she would protect the child from both of his parents, if necessary, but stated that it would be difficult. Petitioner explained that, prior to the filing of the abuse and neglect petition, despite knowledge of the domestic violence between the child's parents, she never filed for guardianship or custody of the child, but claimed that she had the child most of the time. She further admitted that she never called CPS on behalf of the child, even when she observed the mother with two black eyes. However, according to petitioner, she called the police multiple times due to the domestic violence between the parents and took the mother to obtain domestic violence petitions on more than one occasion. Petitioner claimed that she did not know if the mother continued to have a contact with the father. However, the father testified during the dispositional hearing that petitioner had knowledge of the mother using petitioner's car to visit him during the proceedings.

After testimony was presented, counsel for petitioner argued that she had standing to intervene because she was the great-grandmother of the child, had a bond with the child, and requested that the child be placed with her. Counsel for the DHHR argued that there would likely be constant conflict within petitioner's family, as well as with the child's father and his family. Further, the DHHR argued that petitioner would have to rely on other family members to care for the child while petitioner was working. The DHHR also expressed concern that petitioner may take the child to North Carolina where her fiancé resides. The guardian objected to placing the child with petitioner and objected to granting her motion to intervene. In support, the guardian argued that petitioner never attempted to legally protect the child, even when she had knowledge of the domestic violence between the parents. According to the guardian, petitioner's home was not fit for the child based upon the number of people living in the home, particularly in light of their substance abuse issues and criminal histories. The circuit court found that it was not

2

appropriate to permit intervention to allow placement of the child with petitioner. The circuit court noted that it did not believe that petitioner could protect the child. Petitioner appeals the circuit court's May 16, 2018, order denying her motion to intervene.[2]

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, this Court finds no error in the proceedings below.

On appeal, petitioner argues that the circuit court erred in not ordering a home study be conducted and not placing the child in her care.[3] In support, petitioner asserts that, pursuant to West Virginia Code § 49-4-114, the DHHR was required to perform a home study. We find no merit to petitioner's argument. The DHHR found that a home study was unnecessary based upon evidence that the home was not suitable for the child. The record shows that the mother lived in the home, that the home was deplorable, and that several family members also lived in the home.

---

[2]Both parents' parental rights to the child were terminated below. The permanency plan for the child is adoption in his current foster placement.

[3]Petitioner's brief also includes an allegation that the circuit court erred in denying her motion to intervene. In support, petitioner asserts that the circuit court did not make findings regarding its decision. However, because the circuit court denied petitioner permanent placement of the child, it is unnecessary to address the circuit court's rulings regarding the denial of the motion to intervene. Additionally, petitioner contends that the circuit court erred in not holding a full hearing on her motion to intervene. However, petitioner fails to cite to any authority or evidence in the record in support, which violates Rule 10(c)(7) of the West Virginia Rule of Appellate Procedure that provides, in part, that the "argument must contain appropriate and specific citations to the record on appeal." Additionally, in an Administrative Order entered December 10, 2012, Re: Filings That Do Not Comply With the Rules of Appellate Procedure, the Court specifically noted that "[b]riefs that lack citation of authority [or] fail to structure an argument applying applicable law" are not in compliance with this Court's rules. As such, we decline to address this assignment of error on appeal.

Pursuant to West Virginia Code § 49-4-114(a)(3), the DHHR "shall first consider the suitability and willingness of any known grandparent or grandparents to adopt the child. Once grandparents who are interested in adopting the child have been identified, the department shall conduct a home study evaluation, including home visits and individual interviews by a licensed social worker." However, the DHHR deemed a home study unnecessary based on the evidence that petitioner's home was unfit for the child.

Further, petitioner fails to acknowledge that placement with a grandparent must be consistent with the child's best interests. We have noted that "the preference for grandparent placement may be overcome only where the record reviewed in its entirety establishes that such placement is not in the best interests of the child." *Napoleon S. v. Walker*, 217 W.Va. 254, 261, 617 S.E.2d 801, 808 (2005). Petitioner claims that she and the child have a close bond and that she would protect him. However, due to the totality of the circumstances of this case, the DHHR did not find petitioner's home to be a suitable placement for the child. First, the child's mother and numerous other family members lived with petitioner throughout the proceedings. These family members have substance abuse issues and criminal histories. Other family members' disabilities caused them to be unable to provide proper care for the child. If placed with petitioner, the child would be left in the care of those individuals while she worked. Also, due to the conflicts within petitioner's family and the domestic violence between the child's parents, the DHHR did not believe that petitioner would be able to protect the child. Therefore, it is clear that placement with petitioner was not in the child's best interest, and the circuit court did not abuse its discretion by not placing the child with her.

For the foregoing reasons, we find no error in the decision of the circuit court, and its May 16, 2018, order denying petitioner intervenor status is hereby affirmed.

Affirmed.

**ISSUED**: November 19, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice Paul T. Farrell sitting by temporary assignment

4