# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **E.F.-1, C.F.-1, and E.F.-2**

**No. 20-0115** (Hardy County 18-JA-19, 18-JA-20, and 18-JA-21)

**FILED**
**November 4, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother T.C., by counsel Lauren M. Wilson, appeals the Circuit Court of Hardy County's December 3, 2019, order for custodial allocation following an abuse and neglect proceeding.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Michael L. Jackson, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem, Marla Zelene Harman, filed a response on behalf of the children in support of the circuit court's order. Respondent Father C.F.-2, by counsel William H. Judy III, made no appearance before the Court. On appeal, petitioner argues that the circuit court erred in granting her primary custody of E.F.-1 only and granting primary custody of C.F.-1 and E.F.-2 to respondent father after she successfully completed her improvement period.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds that the circuit court erred in failing to apply the statutory analysis found in West Virginia Code §§ 49-9-206, 207, and 209, in determining custodial allocation. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the West Virginia Rules of Appellate Procedure, and a memorandum decision is appropriate to vacate and remand the matter to the circuit court.

In July of 2018, the DHHR filed a child abuse and neglect petition alleging that petitioner exposed the children to controlled substances in her home. The DHHR alleged that petitioner was

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, as two of the children share the same initials, we refer to them as E.F.-1 and E.F.-2, respectively, throughout this memorandum decision. Similarly, because one of the children and respondent father share the same initials, we refer to them as C.F.-1 and C.F.-2, respectively, throughout this memorandum decision.

1

arrested for possession of methamphetamine in June of 2018, and that she posted bond for that charge, only to be re-arrested for driving under the influence of a controlled substance and possession of methamphetamine a short time later. According to the DHHR, respondent father was a nonabusing parent of all three children and was awarded primary custody of eight-year-old E.F.-2 in January of 2018. E.F.-2 remained in the father's custody throughout the proceedings. Following the filing of the petition, the DHHR placed sixteen-year-old E.F.-1 and twelve-year-old C.F.-1 in their maternal grandmother's custody.

Petitioner stipulated to the conditions of abuse and neglect in September of 2018, and the circuit court adjudicated her as an abusing parent. Petitioner moved for a post-adjudicatory improvement period, which was granted. The parties agreed to a case plan wherein petitioner was required to complete an in-patient substance abuse program and remain drug-free throughout the proceedings.

Over the next several months, petitioner substantially complied with her improvement period, and it was extended. Respondent father raised concerns that the maternal grandmother was attempting to alienate E.F.-1 and C.F.-1 from him and moved for physical custody of those children. The circuit court denied the motion, but ordered the grandmother to encourage visitation between these children and respondent father. The circuit court also ordered the DHHR to provide family therapy for respondent father and the children. In June of 2019, the DHHR reported that family therapy between respondent father and E.F.-1 was progressing well, but family therapy with C.F.-1 and E.F.-2 had yet to begin. Respondent father again moved for custody of E.F.-1 and C.F.-1, citing his continued concerns of alienation by the maternal grandmother and other relatives. The circuit court denied the motion, citing the need for additional therapy between respondent father and the children, but ordered extended visitation for all parties.

In September of 2019, the circuit court concluded that petitioner successfully completed her post-adjudicatory improvement period. Petitioner and the father both moved for custody of all three children. Based on testimony of the children's therapist, the circuit court found that petitioner "encouraged the children to not have a meaningful relationship with their father and the children remain fearful of angering [petitioner.]" The circuit court found that C.F.-1 "in particular has suffered from this situation [and has been] diagnosed with Post-Traumatic Stress Disorder as a result of [petitioner's] conduct." Ultimately, the circuit court found that it was in C.F.-1 and E.F.-2's best interest to be placed with respondent father, "with ongoing custodial allocation" for petitioner. E.F.-1 was returned to petitioner's care, with custodial allocation afforded to respondent father. The circuit court ordered the parties to convene a multidisciplinary team ("MDT") meeting to determine a schedule for custodial allocation.

In October of 2019, upon learning that the parties failed to come to an agreement regarding custodial allocation, the circuit court heard the parties' testimony and arguments, and provided a detailed schedule for custodial allocation and responsibilities. Thereafter, both parties filed motions for reconsideration of the circuit court's custodial allocation order. The circuit court

2

denied these motions, as memorialized by its December 3, 2019, order. Petitioner now appeals that order.[2]

The Court has previously held:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in granting the father primary custody of C.F.-1 and E.F.-2 after she successfully completed her improvement period. She asserts, without any supporting citation to the record, that the children "had very little relationship" with respondent father prior to family counseling, which was initiated during these proceedings. Petitioner argues that she completed the terms of her improvement period and demonstrated an ability to maintain a suitable home for the children. In her opinion, the children would have been better served by placement in her home.

Upon our review of the order on appeal, we note a stark absence of the mandatory considerations and procedure for a custodial allocation found in Chapter 48 of the West Virginia Code. Recently, in *In re T.M.*, this Court considered whether "allocation of custody [following the dismissal of a child abuse and neglect petition] is governed by the precepts established in our abuse and neglect caselaw or the statutory considerations mandated for the allocation of child custody and decision making responsibilities," as found in West Virginia Code §§ 48-9-206, 207, and 209. 242 W. Va. 268, 276, 835 S.E.2d 132, 140 (2019). We considered that the framework found in West Virginia Code § 48-9-206(a) "sets forth the essential criteria which, in the collective wisdom of the legislature, serve a child's interests" and codified the "best interests" analysis that permeates our holdings related to abuse and neglect proceedings. *Id*, at 278, 835 S.E.2d at 142. Additionally, we noted that the provisions of West Virginia Code § 48-9-209 "bestow broad discretion on a court making a custodial allocation to ensure that a child is protected from any harm the abuse and neglect findings potentially forecast." *Id*, at 279, 835 S.E.2d at 143. To that end, we emphasized that subsection (c) of that section imposes a "mandatory duty upon a court making custodial allocations to make special *written* findings demonstrating that any such allocation includes

---

[2]The parents retain their parental rights, and the children have achieved permanency in their custody.

limitations which will adequately protect the child from potential harm as a result of the abuse and neglect findings of which the court is aware." *Id*. Based on these considerations, we crafted the following syllabus point:

> A circuit court is obligated to apply the factors and considerations set forth in West Virginia Code §§ 48-9-206 (2018) and -207 (2001) in allocating custodial and decision-making responsibilities when reunifying children subject to abuse and neglect proceedings with parents, guardians, or custodians who are no longer cohabitating at the close of the proceedings. Where findings of abuse and/or neglect have been established, the circuit court must further employ the mandatory considerations and procedures set forth in West Virginia Code § 48-9-209 (2016), in order to protect the children from further abuse and/or neglect.

*T.M.*, 242 W. Va. at 269, 835 S.E.2d at 132, syl. pt. 5.

Here, just as in *T.M.*, we find no demonstrable evidence that the circuit court employed the analysis required by West Virginia Code § 48-9-206. As we held in *T.M.*, we again conclude that "[g]iven the absence of discussion of the applicability of the factors or reference thereto, we cannot simply presume that the court considered these factors and affirm on that basis." *Id*. at 280, 835 S.E.2d at 144. Moreover, petitioner's adjudication as an abusive and neglectful parent, regardless of her success in remedying those conditions of abuse and neglect, imposed an additional statutory consideration upon the circuit court pursuant to West Virginia Code § 48-9-209, which mandates special written findings in that regard. Accordingly, we must reverse the circuit court's allocation of custodial responsibilities and remand for consideration of the factors set forth in West Virginia Code §§ 48-9-206 and 207, as well as the limitations and procedures mandated by West Virginia Code § 48-9-209.[3]

For the foregoing reasons, we reverse the circuit court's December 3, 2019, and November 7, 2019, orders as those orders relate to the circuit court's allocation of custodial responsibility and remand for further proceedings consistent with this decision.[4] The circuit court is directed to hold

---

[3]To the extent petitioner's assignment of error asserts that the circuit court simply erred in its custodial allocation of primary custody to respondent father over petitioner, we similarly find that our remand of this matter moots this argument.

[4]We further instruct the circuit court that, on remand, any court-appointed attorneys and the guardian ad litem are to continue their involvement until permanent placement is achieved through the custodial and decision-making allocations required herein. *See* Syl. Pt. 5, *James M. v. Maynard*, 185 W. Va. 648, 649, 408 S.E.2d 400, 401 (1991) ("The guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home."). Permanent placement of C.F.-1 and E.F.-2 is required to bring the abuse and neglect proceedings in the instant case to a conclusion and that has not yet occurred. Therefore, any such court appointments continue to be in effect. *But cf. Z. D. and D. D.,* 239 W. Va. 890, 806 S.E.2d 814 (disapproving use of court-appointed counsel and guardian ad litem where parent attempted to utilize abuse and neglect proceedings to modify shared parenting plan).

4

the hearings it deems necessary, if any, and issue a final order for this case in the next sixty days. The Clerk is hereby directed to issue the mandate contemporaneously herewith.

Reversed and remanded.

**ISSUED**: November 4, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison