**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

FILED

**December 10, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **A.W., W.C., and Z.W.**

**No. 20-0427** (Mercer County 18-JA-25-DS, 18-JA-26-DS, and 18-JA-27-DS)

## MEMORANDUM DECISION

Petitioner Mother D.C., by counsel Gerald R. Linkous, appeals the Circuit Court of Mercer County's April 7, 2020, order terminating her custodial rights to A.W., W.C., and Z.W.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel James W. Wegman, filed a response in support of the circuit court's order. The guardian ad litem, Elizabeth Davis, filed a response on the children's behalf in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her custodial rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In February of 2018, the DHHR filed a child abuse and neglect petition that alleged petitioner failed to provide the children with adequate housing and other basic necessities. The DHHR alleged that during a home visit, the lower floor of petitioner's apartment was soaked from water leaking into the home. The DHHR workers observed that water soaked through the carpet and splashed onto the walls and that the children were walking barefoot through the home. Further, the home was cold and cold air was flowing through the vents. The oven was open and on "in what appeared to be an attempt to heat the house." The refrigerator contained "barely any food." The DHHR workers began looking for possible placements for the children, and petitioner became "very agitated and uncooperative." The workers called law enforcement for assistance after petitioner "began walking around with a large knife." Although the workers offered petitioner the opportunity to go with the children, she refused to sign a protection plan or agree to temporary placement of the children. Further, the DHHR alleged that it had provided parenting and adult life skills services to petitioner in January of 2018. Petitioner waived her right to a preliminary hearing, and the circuit court ordered that she participate in a psychological evaluation.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

In August of 2018, the circuit court held an adjudicatory hearing and heard testimony from petitioner's psychological evaluator and two DHHR workers. The circuit court found that petitioner had abused and neglected the children and adjudicated her as an abusing parent. The circuit court set forth conditions for a post-adjudicatory improvement period and ultimate reunification, which included maintaining suitable housing, demonstrating proper food and food preparation for the children, ensuring the children attended school, procuring sufficient finances to provide for the children, and petitioner addressing her mental health issues. The circuit court granted petitioner a post-adjudicatory improvement period in October of 2018.

The circuit court held a dispositional hearing in October of 2019, where the guardian and DHHR jointly moved for the termination of petitioner's custodial rights, which she opposed. Petitioner's case worker testified that she had mostly complied with the terms of her improvement period, but that she had failed to secure suitable housing. The case worker explained that, despite the DHHR's multiple promptings, petitioner had only recently begun searching for housing in the three months preceding the dispositional hearing. Petitioner applied for Housing and Urban Development ("HUD") housing two months prior to the hearing and had been approved, but had not yet secured housing through that program. The DHHR worker testified that a period of three to six months would be required to determine whether petitioner could properly manage her housing once obtained. At the time of the dispositional hearing, the children had been out of petitioner's custody for twenty months. One of petitioner's service providers testified that petitioner completed a budget and had sufficient funds to cover her estimated costs. The provider testified that petitioner would only be able to afford HUD housing based on her current income. The provider also supervised petitioner's visitations and opined that the visitations were going well, but that petitioner struggled with making the children listen to her directions. In her opinion, petitioner would need "three or four months" of instruction and observation after obtaining housing prior to overnight visitation and two additional months of observation prior to reunification with the children. Finally, the children's therapist testified that A.W. and W.C. were excelling in their current placement. Petitioner presented no evidence. Upon questioning by the circuit court, petitioner's counsel proffered that petitioner should be able to acquire housing through the HUD program in two months. Therefore, the circuit court continued the hearing until January of 2020 to provide petitioner an opportunity to obtain housing.

The circuit court held the final dispositional hearing in January of 2020. Petitioner testified that she made a security deposit and paid the first month's rent on a three-bedroom apartment and believed that she would sign the lease for that apartment the following day, pending the landlord's approval of her background check. Petitioner expected to move in "as soon as possible," but she acknowledged that she did not have furnishings for the home. She believed that she could acquire appropriate furnishings "in a couple days." Ultimately, the circuit court found that termination of petitioner's custodial rights was in the children's best interests. The circuit court memorialized its decision by its April 7, 2020, order, which petitioner now appeals.[2]

---

[2]The children's father is deceased. According to the parties, the permanency plan for the children is legal guardianship in the custody of their maternal aunt, where they were placed throughout the proceedings.

The Court has previously held:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her custodial rights because it failed to give sufficient weight to the evidence regarding her compliance with the family case plan. Indeed, the witnesses generally agreed that petitioner made progress on the terms of her improvement period. However, petitioner failed to obtain housing, which she acknowledges on appeal. She argues that the circuit court improperly weighed her failure to obtain housing because there was no HUD housing available in the county. According to petitioner, the lack of HUD housing should be considered an "economic factor" and not a factor warranting the termination of her custodial rights. We find no merit to petitioner's argument.

First, petitioner has premised her assertion that the lack of HUD housing was an "economic factor" on the definition of "neglected child" as found in West Virginia Code § 49-1-201:

> A [n]eglected child means a child . . . [w]hose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care, or education, when that refusal, *failure, or inability is not due primarily to a lack of financial means on the part of the parent, guardian, or custodian*.

(Emphasis added). Petitioner contends that the Legislature "specifically excludes economic situations from falling within the definition of neglect." However, this definition is relevant only to a circuit court's adjudication of whether a child is "neglected" within the meaning of the West Virginia Code. West Virginia Code § 49-4-601(i) sets forth that "[a]t the conclusion of the adjudicatory hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether the child is abused or neglected and whether

the respondent is abusing, neglecting, or, if applicable, a battered parent."[3] Petitioner cites to no authority to support her application of this definition to the proceedings following the adjudicatory hearing, and we decline to do so here.

Furthermore, petitioner fails to acknowledge that she agreed to the terms and conditions of her family case plan, which included the condition that she obtain and maintain suitable housing for herself and the children. During an improvement period, the parent "shall be responsible for the initiation and completion of the terms of the improvement period." W. Va. Code § 49-4-610(4)(A). "In making the final disposition in a child abuse and neglect proceeding, the level of a parent's compliance with the terms and conditions of an improvement period is just one factor to be considered. The controlling standard that governs any dispositional decision remains the best interests of the child[ren]." Syl. Pt. 4, *In re B.H.*, 233 W. Va. 57, 754 S.E.2d 743, 745 (2014). Here, petitioner was adjudicated as an abusing parent after she failed to provide the children an appropriate home. Thus, it was reasonable for the family case plan to include obtaining and maintaining suitable housing as a term of her improvement period. To the extent that petitioner argues that she applied for HUD housing but no such housing was available in the county, she provides no citation to the record to support such a claim.[4] Rather, the record shows that petitioner failed to actively pursue housing, despite prompting from the DHHR. The evidence provides that petitioner did not apply for HUD housing until sometime around August of 2019, more than six months after she had been granted a post-adjudicatory improvement period. Due to her delay, the providers could not gauge whether petitioner could maintain a home or budget and, ultimately, could not determine whether the children would be free from further neglect in her care.

West Virginia Code § 49-4-604(c)(6) provides that a circuit court may terminate a parent's custodial rights upon finding that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination of custodial rights

---

[3]For clarity, a respondent parent is "abusing [or] neglecting" when the parent's conduct "has been adjudicated by the court to constitute abuse or neglect as alleged in the petition charging child abuse or neglect." *See* W. Va. Code § 49-1-201. "Child abuse and neglect" is further defined as "any act or omission that creates an abused child or a neglected child as those terms are defined in [W. Va. Code § 49-1-201]." *Id.*

[4]Petitioner's failure to provide a citation is in contravention of Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure, which requires that

[t]he brief must contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on . . . . [and] must contain appropriate and specific citations to the record on appeal . . . . The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

Additionally, in an Administrative Order entered December 10, 2012, Re: Filings That Do Not Comply With the Rules of Appellate Procedure, the Court specifically noted that "[b]riefs with arguments that . . . do not 'contain appropriate and specific citations to the record on appeal . . .' as required by rule 10(c)(7)" are not in compliance with this Court's rules.

is necessary for the welfare of the children. Pursuant to West Virginia Code § 49-4-604(d)(3), a circuit court may determine that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected when

> [t]he abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

Here, petitioner failed to follow through with a reasonable family case plan, despite ample opportunity to do so. Her failure to obtain and maintain suitable housing prevented her service providers from assessing her progress in remedying the conditions of abuse and neglect. The providers testified that once petitioner obtained housing, they would recommend a period of at least three months to observe whether she could manage that housing. Yet, by the final dispositional hearing and nearly two years after the initiation of the proceedings, petitioner still did not have suitable housing for the children.

> Although it is sometimes a difficult task, the trial court must accept the fact that the statutory limits on improvement periods (as well as our case law limiting the right to improvement periods) dictate that there comes a time for decision, because a child deserves resolution and permanency in his or her life, and because part of that permanency must include at minimum a right to rely on his or her caretakers to be there to provide the basic nurturance of life.

*State ex rel. Amy M. v. Kaufman*, 196 W. Va. 251, 260, 470 S.E.2d 205, 214 (1996). While we acknowledge petitioner's progress, we agree with the circuit court's ultimate decision to terminate her custodial rights. The children were excelling in their placement with their maternal aunt and could achieve permanency in her care. Even after several months of services, petitioner could not provide the children's basic need for suitable housing. Accordingly, we find petitioner is entitled to no relief on appeal.

For the foregoing reasons, we find no error in the decision of the circuit court, and its April 7, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: December 10, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

5