# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **H.J., C.J., and M.J.**

**No. 21-0452** (Raleigh County 20-JA-133, 20-JA-135, and 20-JA-136)

## MEMORANDUM DECISION

Petitioner J.C., by counsel Daniel J. Burns, appeals the Circuit Court of Raleigh County's May 4, 2021, order terminating any rights he had to H.J., C.J., and M.J.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Brittany Ryers-Hindbaugh, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Colleen M. Brown-Bailey, filed a response on the children's behalf in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in terminating his "psychological" parental rights by finding that he was a "psychological" parent with rights to terminate and in finding that petitioner was properly "served with the petition and notices of the proceedings."

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In October of 2020, the DHHR filed an abuse and neglect petition alleging that the mother and petitioner, the live-in boyfriend or "paramour," physically abused the children with excessive corporal punishment. According to the DHHR, the children's nonabusing father and the mother shared custody, and the father filed a petition for a domestic violence protective order after he repeatedly found bruises on the children. The Child Protective Services ("CPS") worker investigated and interviewed the children. Then-six-year-old H.J. reported that the mother and petitioner were fighting, and that petitioner was no longer allowed to touch the children. During

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). The proceedings in circuit court also concerned additional children that are not at issue on appeal.

the questioning of H.J., petitioner entered the room, cussed at the worker, and forced her to leave. Eventually, the worker returned with law enforcement officers and removed the children. The worker interviewed the mother who denied that petitioner disciplined the children. However, during a subsequent interview a few weeks later, the mother admitted that petitioner whipped H.J. and then-three-year-old C.J. for jumping naked on the bed with two-year-old M.J. The worker eventually interviewed petitioner who admitted spanking H.J. and C.J., busting one of the children's lips during an incident when the boys were jumping on the bed, and throwing a chair at C.J. Petitioner admitted to being in a relationship with the mother and living in the home with the children.

At the preliminary hearing, the court asked petitioner whether he had received a copy of the petition and petitioner answered "no." When asked whether he had gone over the contents of the petition with his attorney and understood the allegations against him, petitioner answered, "yes." Petitioner then knowingly and voluntarily waived his right to challenge the removal of the children in a contested preliminary hearing.

In January of 2021, the circuit court held an adjudicatory hearing, but continued the matter because the children's Child Advocacy Center ("CAC") interviews had not been distributed among counsel. No evidence was taken at this hearing. On March 11, 2021, the parties convened a multidisciplinary team ("MDT") meeting to formulate a case plan. Petitioner and the mother failed to appear, but they were represented by counsel.

The continued adjudicatory hearing was held in March of 2021, during which petitioner failed to appear but was represented by counsel. Petitioner's counsel stated that he had not spoken with his client since the preliminary hearing, that the phone number petitioner provided him was no longer in service, and that the letters he sent to petitioner's address were returned. Likewise, the mother's counsel stated that he lost contact with her in January of 2021. Having heard counsels' responses, the circuit court found that petitioner and the mother had an ongoing obligation to remain in contact with their counsel "so that they can make their appearances and assert their rights or challenge anything that is alleged against them." The court found that the parents' failure to appear was voluntary. Ultimately, the court adjudicated petitioner as an abusing parent for excessive physical discipline of the children. The court specifically found petitioner as a "custodial parent" or a "psychological" parent "based upon the ongoing relationship" with the mother. Finally, at the request of petitioner's counsel, the court ordered notice by publication for the final dispositional hearing.

In April of 2021, the circuit court held a dispositional hearing. Petitioner appeared in person and by counsel. The mother testified that she had been in a relationship with petitioner for two years, and that prior to the instant petition being filed, she had primary custody of the children. The DHHR worker testified that she took over the case in late January of 2021 and had not had any contact with petitioner. Petitioner testified that he "assisted in raising the kids," that the children looked to him as a "father figure," and named several activities he did with them when he was off work such as watching television with the children, playing video games, and taking the children to the Y.M.C.A. Petitioner denied excessive physical punishment of the children and stated that the allegations in the petition were false. Based upon the apparent relationship between petitioner and the mother and the children, and petitioner's participation in "rearing and raising the

children," the circuit court deemed petitioner a "psychological" parent of the children. The court then terminated "any rights [petitioner] would have as a psychological parent" to the children and found that said termination was in the children's best interests. Petitioner appeals the May 4, 2021, dispositional order terminating his "psychological parental rights."[2]

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

We first address petitioner's argument that the circuit court erred in finding that he was properly "served with the petition and notices of the proceedings." Petitioner argues that there was no proof of service of the petition to petitioner via certified mail or personal service. *See* W. Va. Code § 49-4-601(e)(3). However, in his brief, petitioner concedes that he discussed the petition with counsel prior to waiving his right to a preliminary hearing. As such, any alleged error by the DHHR in failing to serve petitioner with the petition had been apparently cured as petitioner appeared for his preliminary hearing, testified that he was aware of the petition's contents, had discussed the consequences of the petition with counsel, and voluntarily and knowingly waived his right to a contested preliminary hearing. Considering the above, petitioner was clearly on notice of the allegations against him. As such, we find that petitioner is entitled to no relief in this regard.

Regarding petitioner's alleged lack of notice for the dispositional hearing, we likewise find this argument without merit. Petitioner cites West Virginia Code § 49-4-601(e)(4) that provides that "[i]f service cannot be obtained by personal service or by certified mail, notice shall be by publication as a Class II legal advertisement in compliance with § 59-3-1 *et seq*. of this code." However, this code section is inapplicable. Petitioner's complaint is in regard to the notice of hearing for the final dispositional hearing, and this code applies to service of the petition and notice of the preliminary hearing, which we already addressed above. Nevertheless, petitioner appeared

---

[2]The mother's parental rights were also terminated below. The children's biological father is nonabusing, and the children remain in his care.

and testified at the dispositional hearing, thereby proving that he was aware of the hearing, and negating any alleged error.[3]

Finally, petitioner argues that circuit court erred in terminating his "psychological" parental rights by finding that he was a "psychological" parent with rights to terminate. According to petitioner, there was insufficient evidence to show that he was a psychological parent as there was no indication that he filled the psychological, physical, emotional, or financial needs of the children. Petitioner further asserts that his relationship with the children was not of "substantial duration." Petitioner asserts that inasmuch as there existed a psychological parent relationship, the relationship ended upon the removal of the children, as petitioner did not attempt to visit the children. As such, petitioner argues that the circuit court unnecessarily terminated rights which petitioner did not possess.

The Court has previously defined a "psychological parent" as follows:

> A psychological parent is a person who, on a continuing day-to-day basis, through interaction, companionship, interplay, and mutuality, fulfills a child's psychological and physical needs for a parent and provides for the child's emotional and financial support. The psychological parent may be a biological, adoptive, or foster parent, or any other person. The resulting relationship between the psychological parent and the child must be of substantial, not temporary, duration and must have begun with the consent and encouragement of the child's legal parent or guardian. To the extent that this holding is inconsistent with our prior decision of *In re Brandon L.E.,* 183 W.Va. 113, 394 S.E.2d 515 (1990), that case is expressly modified.

Syl. Pt. 3, *In re Clifford K.*, 217 W. Va. 625, 619 S.E.2d 138 (2005).

The evidence below shows that there was sufficient evidence to find petitioner as a psychological parent as the majority of the above elements were met. During the dispositional hearing, the mother testified to being with petitioner for over two years and having primary custody of the children during this time. Considering the children's young ages, two years could be considered a substantial amount of time to be living with the mother's paramour—indeed M.J. was approximately two years old when removed. Additionally, petitioner testified that he worked to support the household and would engage in activities with the children after work such as watching television or taking the children to the Y.M.C.A. As such, it appears that petitioner lived, played, and interacted with the children on a daily basis, and specifically testified that he believed the children saw him as a "father figure." Additionally, we can deduce that the mother consented to

---

[3]In petitioner's brief, he indicates that "most if not all of the proceedings occurred via Microsoft Teams." Therefore, petitioner's participation required that he have a working e-mail or phone to participate. As evidenced by his appearances at the preliminary and dispositional hearings, petitioner had access to this remote platform, knew how to participate, and either clicked on a link within an e-mail or called a specific number to join the hearing. Apparently, petitioner failed to stay in contact with counsel or the court regarding any change in e-mail address or phone number prior to the adjudicatory hearing in March of 2021.

petitioner's relationship with the children, since she lived with petitioner and the children. Moreover, petitioner's inaction regarding visitation of the children after they were removed has no bearing on the fact that he had a significant role in the children's lives prior to their removal.

Further, petitioner ignores the fact that West Virginia Code § 49-4-601(b) requires that

> [e]ach petition shall name as a party each parent, guardian, *custodian, other person standing in loco parentis of or to the child allegedly neglected or abused* and state with specificity whether each parent, guardian, custodian, or person standing in loco parentis is alleged to have abused or neglected the child.

(Emphasis added). The record shows that the circuit court found petitioner to be a "custodial parent" at the adjudicatory hearing, and the record supports this finding as petitioner shared "actual physical possession or care and custody" of the children with the mother, despite not having been "granted custody of the child[ren] by any contract or agreement." W. Va. Code § 49-1-204; *see also* Rule 3 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings ("Parent" means "an individual defined as a parent by law or on the basis of a biological relationship, marriage to a person with a biological relationship, legal adoption or other recognized grounds, pursuant to W.Va. Code § 49-1-204."). As such, regardless of whether or not the circuit court erred in finding that petitioner was a psychological parent, the record clearly establishes that petitioner exercised custodial rights to the children such that West Virginia Code § 49-4-601 required that he be a named respondent in the proceedings.

Most importantly, the evidence showed that petitioner and the mother had no plans of separating and they intended to stay together regardless of the outcome of the proceedings. Therefore, it logically stands that if the children were to be reunified in the home, the case plan would have needed to address petitioner and his excessive discipline of the children before returning the children to his care. With this in mind, coupled with petitioner's testimony that he assisted in raising the children and that the children saw him as a father figure, the court did not err in terminating "any rights [petitioner] would have as a psychological parent" to the children. As set forth above, petitioner, at the very least, had custodial rights available for termination, and the circuit court did not err in terminating these rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its May 4, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: January 12, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice William R. Wooton