**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **T.J.**

**No. 21-0858** (Kanawha County 20-JA-257)

**MEMORANDUM DECISION**

Petitioner Father C.H., by counsel Carl Dascoli Jr., appeals the Circuit Court of Kanawha County's September 23, 2021, order placing T.J. in a legal guardianship.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Katica Ribel, filed a response in support of the circuit court's order. The guardian ad litem, Donnie L. Adkins II, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in placing the child in a legal guardianship without first waiting for petitioner to submit to paternity testing.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Because petitioner's lone assignment of error presents an incredibly narrow legal issue, it is unnecessary to undertake a protracted history of the proceedings below. Instead, it is sufficient to note that the proceedings were initiated when the DHHR filed a petition against the child's[2] mother based on extreme conditions in the home and untreated mental health issues. In regard to petitioner, the original petition alleged that he "is the natural father of [T.J.]" and that his address

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]The proceedings below concerned additional children, but petitioner raises no argument in regard to those children. As such, they are not at issue on appeal.

1

was unknown. The petition concluded by alleging that all the adult respondents failed to provide the children with the necessary food, clothing, supervision, and housing.

Petitioner did not appear for the preliminary hearing in July of 2020. At an adjudicatory hearing in August of 2020, petitioner asked that he be permitted to testify regarding his request to obtain custody of the child. The guardian objected and asked that the DHHR be directed to conduct a home study of petitioner's residence and for petitioner to undergo a psychological examination for parental fitness. The court granted the guardian's motion.

It was later discovered that paternity of T.J. had never been established. The court ordered that petitioner undergo genetic testing in October of 2020 in order to establish paternity. This testing was not completed. In April of 2021, the court again entered an order for petitioner to undergo genetic testing to establish paternity. Again, this testing was not completed.

In September of 2021, the court held a dispositional hearing. Throughout the proceedings, the child's mother had participated in an improvement period that was extended several times because of her compliance. During the dispositional hearing, the DHHR indicated that it had reached an agreement with the mother whereby she would consent to T.J. being placed in a legal guardianship with the current foster mother. The court found that this disposition was in the child's best interests and ordered placement of T.J. in accordance with the agreement.

Petitioner then objected when the court stated that the matter could be dismissed. Petitioner's counsel indicated that "[d]uring the duration of this case I followed up with both . . . [Child Protective Services] and counsel as to the status of the DNA test" and also "sent an e-mail . . . as far back as December 6th, saying what's going on with the DNA test, but there has never been a DNA test" of petitioner. Counsel indicated that he "[n]ever got a letter from the Bureau scheduling a DNA test." Counsel argued that "the matter has not resolved itself" because petitioner had not been provided an opportunity to establish paternity.

The guardian rebutted petitioner's counsel's characterization, indicating that the court "addressed this issue early on" by ordering DNA testing and that "[i]t is my understanding that [petitioner] did not appear." The guardian argued that permanency had been achieved and further delaying the proceedings was not appropriate. According to the guardian, if petitioner "does decide . . . to get the DNA test, when it's a time that's good for him, and then it's confirmed that he is the father, then he can petition the [c]ourt." Petitioner's counsel then rebutted the guardian's allegation that petitioner had not been involved in the case by pointing out that petitioner had appeared at every hearing.

Ultimately, the court found "that this case found permanency" and "close[d] out the case." The court was clear that it was "not going to delay a permanency situation here because we still can't manage to, you know, a year later some how [sic] [petitioner] can't avail himself or the Department can't avail themselves to get DNA testing." The court noted that the child was born in 2019, "it's now going on 2022. I would think that [petitioner] could assert himself at some point and file a petition for paternity action in family court, he could have done all kinds of stuff. So I

2

am just not going to hold this case up." Accordingly, the court ordered the matter dismissed over petitioner's objection.[3] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner's lone argument is that the court erred in dismissing the matter before paternity testing could be completed. According to petitioner, this "forever cut[] off the [p]etitioner C.H.'s potential parental rights" to the child. However, all of the authority upon which petitioner relies is based on an established parental right. *See*, *e.g.*, *Santosky v. Kramer*, 455 U.S. 745, 753 (1982) (explaining that a natural parent has a "fundamental liberty interest . . . in the care, custody, and management of their child"). Here, petitioner ignores two important points: (1) he was never established to be the child's father and, thus, has no fundamental liberty interest in regard to the child; and (2) the circuit court made no ruling whatsoever in regard to him. As the circuit court noted, over two years after the child's birth, petitioner had still taken no steps to establish his paternity. Regardless of the cause for the unresolved paternity test, we agree with the circuit court that delaying permanency for the child so that petitioner could continue attempting that which he failed to achieve in the first two years of the child's life was not in the child's best interest. Syl. Pt. 3, *In re S.W.*, 233 W. Va. 91, 755 S.E.2d 8 (2014) ("In a contest involving the custody of an infant the welfare of the child is the polar star by which the discretion of the court will be guided."). Further, because the circuit court did not make any ruling in regard to petitioner, as he claims on appeal, he necessarily cannot be entitled to relief. Importantly, as the guardian argued and the circuit court noted, nothing in the court's ruling on appeal prevents petitioner from attempting to assert his paternity under any avenues that may be available under Chapter 48 of the West Virginia Code.

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 23, 2021, order is hereby affirmed.

---

[3]The mother agreed to the child's placement in a permanent legal guardianship in the current placement. The permanency plan for the child is to remain there.

Affirmed.

**ISSUED**: May 12, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice C. Haley Bunn