**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **B.D. and A.D.**

**No. 21-0835** (Wood County 20-JA-169 and 20-JA-170)

**MEMORANDUM DECISION**

Petitioner Grandmother A.L., by counsel Nancy McGhee, appeals the Circuit Court of Wood County's September 16, 2021, dispositional order terminating her custodial and guardianship rights to B.D. and A.D.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Michael L. Jackson, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Garrett C. Villers, filed a response on the children's behalf in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her custodial and guardianship rights when the DHHR failed to prove by clear and convincing evidence that she could not correct the conditions of abuse and neglect in the near future.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In August of 2020, the DHHR filed an abuse and neglect petition against petitioner after receiving a referral that she was abusing methamphetamine in the children's presence and was not supervising them. Upon investigating the referral, the Child Protective Services ("CPS") worker interviewed petitioner, who denied methamphetamine use but admitted using marijuana. The worker observed the home to be unclean with a filthy and malodorous bathroom containing a full and unflushed commode due to the lack of water service to the apartment. The worker observed urine-soaked clothes laying in the hallway, and petitioner stated that she threw those clothes in a

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

pile because A.D. was not potty-trained. There were dirty dishes piled in the kitchen area, and flies everywhere. The worker observed that the children had no structure or discipline and observed petitioner yelling and cursing at the then three- and five-year-old children, calling them "assholes," "little sh*ts," and "little f***ers." Once outside of the foul-smelling apartment, the worker observed the two children sticking their hands in the gas tank of a lawn mower and attempting to start it. Petitioner did nothing to stop these actions. In its petition, the DHHR further explained that petitioner obtained guardianship of the children in August of 2018 due to her daughter's (the mother's) drug abuse and that the children had lived with her since that time. Upon petitioner's failure to successfully comply with an in-home safety plan, the DHHR removed the children from the home. Police were dispatched to aid in the removal, and petitioner and her adult son openly cursed and threatened the CPS worker. The DHHR filed the underlying petition alleging that petitioner failed to provide appropriate housing, mentally and emotionally abused the children, and abused illicit substances.

The circuit court held an adjudicatory hearing in early September of 2020, wherein petitioner did not contest the allegations in the petition. Specifically, petitioner admitted that "she has a substance abuse issue that has inhibited her ability to appropriately care for the children." The circuit court accepted petitioner's stipulation and adjudicated her as an abusing parent.[2] On September 14, 2020, the court granted petitioner a post-adjudicatory improvement period, the terms of which included the following: 1) attend all multidisciplinary team ("MDT") meetings; 2) complete all services as required by the MDT, such as parenting education sessions, adult life skills classes, individualized therapy, and drug screens; 3) undergo a parental fitness and substance abuse evaluation; 4) demonstrate the ability and knowledge to appropriately parent, supervise, and protect the children; and 5) obtain and maintain a clean, safe, stable, and appropriate living environment.

In November of 2020, the court held a review hearing and found that petitioner was compliant with the terms and conditions of her improvement period. This is in spite of the fact that, prior to the hearing, the DHHR submitted a report indicating that petitioner tested positive for methamphetamine on August 31, 2020, September 3, 2020, September 10, 2020, and October 13, 2020. All positive results were confirmed by independent laboratories.

Petitioner completed her parental fitness evaluation in December of 2020. The evaluation stated that petitioner was "unwilling to even acknowledge substance abuse issues or parenting issues therefore the likelihood of changing a problem that is not acknowledged is considered to be poor." By December of 2020, the court ordered that petitioner's visits with the children be increased as she had been generally complying with services. At a review hearing in February of 2021, the court extended petitioner's improvement period, finding that she had been compliant with its terms and conditions and had made some improvements. At this hearing, the court admitted the results from petitioner's substance abuse evaluation from Westbrook Health Services, which concluded that petitioner met the criteria for substance abuse disorder. According to the record,

---

[2]West Virginia Code § 49-1-201 defines an "abusing parent" as "a parent, *guardian*, or other custodian . . . whose conduct has been adjudicated by the court to constitute child abuse or neglect as alleged in the petition charging child abuse or neglect." (Emphasis added.)

petitioner failed to submit to drug screens on January 15, 2021, and February 4, 2021, which were deemed administrative positive drug screens.

By March 1, 2021, the DHHR agreed to attempt a trial reunification with petitioner. However, unbeknownst to the MDT, petitioner was two months behind on rent and the landlord sued her for eviction at a hearing held in magistrate court on March 5, 2021.The magistrate awarded possession of the property to the landlord by April 9, 2021. The MDT was notified of petitioner's impending eviction on approximately March 9, 2021. The CPS worker gave petitioner a list of potential housing solutions to contact prior to her eviction. On March 11, 2021, the DHHR received a referral that the children were left outside of the apartment unsupervised. On March 23, 2021, the guardian and the CPS worker performed a home visit. They observed that the state of the apartment was regressing to pre-petition conditions by having dirty dishes in the sinks, clutter about the residence, numerous cigarette butts sitting in an ashtray on the floor, and some safety concerns.

On April 7, 2021, the guardian and the CPS worker again visited the home while petitioner was in the process of packing her items. Petitioner's adult son was residing in the apartment and openly admitted to them that he smoked marijuana while living there. The guardian observed the children to be dirty and in need of bathing. During this two-hour visit, the guardian and the worker attempted to work with petitioner to plan for new suitable housing. However, petitioner was unmotivated, blamed the landlord and the magistrate for her problems, and would not agree to use public transportation to look for other housing. At that time, the guardian and the worker agreed that the children should be removed as there was no suitable and stable housing for them.

The DHHR filed its motion to terminate petitioner's improvement period on April 21, 2021, stating that petitioner had last attended therapy in February of 2021, was evicted for nonpayment of rent, was not motivated to find other housing "after being given multiple chances and help," allowed an inappropriate person to care for the children, associated with active drug abusers, tested positive for methamphetamine during the trial reunification, and allowed the housing conditions to return to pre-petition state. The DHHR elaborated that petitioner had a full month to search for and obtain new housing after the landlord gave her an eviction notice, and that the assigned CPS worker "worked diligently" with petitioner to attempt to find a new residence. Specifically, the worker found a location that would accept petitioner as well as a housing voucher for first month's rent and told petitioner to call that day to reserve the housing. However, petitioner failed to timely call the owner of the new location and the property was rented to another. The DHHR further stated the petitioner failed to timely fill out housing applications for two subsidized housing communities. Additionally, the DHHR stated that during the guardian and CPS worker's visit on April 7, 2021, petitioner was very uncooperative and defensive when discussing a new plan for housing, and the adult son living in the home became so angry that he punched a hole in the bathroom door. This aggressive incident took place in front of the children and visibly upset them. When the children were removed, law enforcement officers intervened when petitioner's estranged husband appeared and threatened the CPS worker.

In April of 2021, the court held a review hearing and the DHHR presented evidence in support of termination of petitioner's improvement period. The DHHR introduced five drug screen results from petitioner's saliva swab samples, collectively as one exhibit, which samples were

collected while the children were in petitioner's care from late March to April of 2021. Petitioner tested positive for methamphetamine on three screens as well as tetrahydrocannabinol ("THC") on one screen. Petitioner objected to the validity of the three positive drug screens, but not the two negative drug screens. Petitioner alleged tampering with the saliva samples and stated that she intended to subpoena the provider who took the samples for the next hearing. The court admitted the exhibit, noting that it was subject to future questioning. The court addressed the parties regarding finding another method of drug testing for petitioner, and the DHHR proffered that it set up the at-home saliva drug testing to benefit petitioner as she had no transportation and would not use public transportation. The court then changed petitioner's at-home saliva drug testing to in-person urine drug testing at a drug testing center. Notably, later in the hearing, on cross-examination petitioner denied having a drug problem and stated that she "picked up" using methamphetamine after the children's first removal. The court then set the matter for disposition.

The court held a dispositional hearing in May of 2021. The psychologist who performed petitioner's parental fitness evaluation testified that petitioner denied a history of substance abuse but acknowledged that she went on a "fourteen-day meth[amphetamine] binge" after the children were initially taken. Petitioner denied parental deficits and generally minimized any negative issues, including the lack of running water and the condition of the home at the time of the children's initial removal. Another witness testified that she saw the young children outside of the home unsupervised on March 11, 2021—during petitioner's trial reunification.

Prior to the final dispositional hearing, the DHHR submitted a report stating that petitioner had moved in with her estranged husband and her son who previously admitted to regular marijuana use. However, the home was owned by petitioner's elderly father-in-law. This home had not been considered by CPS as placement because petitioner's estranged husband had refused to drug screen or otherwise cooperate in the proceedings, including providing information for a home study.

In July of 2021, the circuit court held a final dispositional hearing. The provider who performed petitioner's in-home saliva drug tests in March and April of 2021 testified to her saliva collection methods, confirmed that she followed protocol for the samples, and denied tampering with any sample. She further explained that, had any sample not been fully sealed or if it appeared to have been tampered with, the laboratory would not have accepted it. Petitioner cross-examined this witness.

Other providers testified that when they visited petitioner's residence on several occasions in early April of 2021, they saw that the floor was covered in dirt, food, and cigarette butts and that despite several days passage between the visits, the state of the apartment had not changed. The children's feet were black and dirty and a vial containing what appeared to be marijuana residue was found in a bedroom. The assigned CPS worker testified that, prior to removing the children in April of 2021, she observed petitioner's apartment to be unclean, cluttered, and unsafe for the children. She described trying to help petitioner obtain other housing but stated that petitioner was not motivated to find a new place to live. She also testified that petitioner was unconcerned with her adult son's marijuana use in the home. Petitioner did not testify.

4

By order entered on September 16, 2021, the court found that despite attempting a trial reunification, the children were removed a short time later "due to the conditions of the home and an imminent eviction with nowhere else in place for the children to reside." The court found by clear and convincing evidence that petitioner lacked "the ability to safely and appropriately care for the children" and noted that petitioner had received numerous services, including prior to the petition's filing. The court noted that in petitioner's parental fitness evaluation, she denied having a substance abuse problem, despite positive drug screens, and she denied any parental deficiencies, despite evidence to the contrary. Specifically, the court found that petitioner "has continued to be unable to provide appropriate housing[,] . . . to deny substance abuse, [and] has continued to make decisions that are not in the best interest of the children and generally showing that she is unable and/or unwilling to appropriately parent." The court concluded that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that termination of petitioner's custodial and guardianship rights was necessary for the children's welfare. Petitioner now appeals the circuit court's September 16, 2021, dispositional order terminating her custodial and guardianship rights to the children.[3]

The Court has previously held:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her custodial and guardianship rights as the DHHR failed to prove by clear and convincing evidence that she could not correct the conditions of abuse and neglect in the reasonably near future. According to petitioner, the only condition of abuse and neglect that needed to be corrected was her substance abuse. Petitioner bases this on the fact that her stipulation at adjudication was specific to her substance abuse and inability to care for the children. As such, petitioner argues that she clearly addressed her substance abuse issues by submitting nearly forty-eight negative drug screens and maintaining sobriety. Petitioner claims that the three positive drug screens obtained during the trial reunification with the children were "highly circumspect" and should not have been considered by the court. In fact, petitioner further claims that she cannot find in the record where the court

---

[3]The parents' parental rights were terminated during the proceedings below. The permanency plan for the children is adoption by their foster family.

admitted the exhibit containing these drug screens. Petitioner states that "[n]o testimony was presented by the WVDHHR as to the reliability of saliva testing or the accuracy of its results." Petitioner contends that her saliva drug testing was "inexplicably" changed to urine drug testing. She further notes that her substance abuse evaluation from Westbrook Health Services concluded that she had not met the criteria for substance abuse disorder. Additionally, petitioner argues that she improved upon the "extraneous" issues, such as the name calling of the children and the condition of the home, while also claiming that these issues were "not proven in court." Finally, petitioner argues that the DHHR failed to work with her to obtain housing by not allowing the children to reside with her, her son, and her estranged husband or, in the alternative, at a hotel.

At the outset, we find that petitioner has fundamentally mischaracterized the record and conveniently ignores salient facts that undermine her various arguments. To begin, petitioner attempts to dodge all other conditions of abuse and neglect by claiming that she was only responsible for addressing her substance abuse. However, petitioner did not contest the allegations in the petition and the DHHR was not required to prove them at adjudication. Further, petitioner stipulated that she was unable to care for the children, which is an all-encompassing statement that easily includes the allegations of her inability to provide a safe and clean home as well as her mental and emotional abuse of the children. Petitioner claims that these other "extraneous" issues were not "proven in court" when the DHHR was not required to prove them at adjudication due to her stipulation. Moreover, petitioner agreed to the terms and conditions of an improvement period, which included addressing her parenting and adult life skills deficits as well as drug testing to address her substance abuse. As such, the conditions of abuse and neglect below constituted more than petitioner's substance abuse issues.

Regarding the five saliva drug samples collected during petitioner's trial reunification with the children, petitioner is wholly mistaken. The transcript of the April of 2021 hearing clearly shows that the court admitted the exhibit, noting that petitioner reserved the right to subpoena witnesses and question the samples at a later hearing. In fact, exactly that occurred at the July of 2021 hearing wherein the DHHR's witness testified as to her experience with these types of tests, her chain of custody of the test tubes, and how she administered the saliva swab collections from petitioner. The provider denied any tampering and explained that the samples would not have been accepted by the laboratory if there had been evidence of tampering. Notably, petitioner cross-examined this witness and failed to produce any evidence of the saliva testing's unreliability or invalidity. Further, petitioner plays coy that these tests were "inexplicably" changed to urine testing when the transcript of the April of 2021 hearing clearly shows that the court changed the testing methods solely based on petitioner's complaints and objections and not due to any proven unreliability. It is also worthwhile to note that petitioner took issue only with the positive drug screens, not the negative drug screens. Upon review, we find that this argument wholly lacks merit, and petitioner is entitled to no relief in this regard.

Turning to the court's ultimate decision to terminate petitioner's custodial and guardianship rights, we find no error. West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental, custodial, and guardianship rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(d) provides that a circuit court may find that there is no reasonable likelihood that the conditions of

abuse and neglect can be substantially corrected when the abusing parent or guardian has "demonstrated an inadequate capacity to solve the problems of abuse or neglect on [his or her] own or with help."

Here, despite the granting and extension of an improvement period, as well as a trial reunification with the children, petitioner failed to address the conditions of abuse and neglect. "When any improvement period is granted to a [parent] . . . the [parent] shall be responsible for the initiation and completion of all terms of the improvement period." W. Va. Code § 49-4-610(4). Petitioner failed to address an important issue in this case: safe, clean, and suitable housing. The evidence at the final dispositional hearing was that petitioner had reverted back to failing to clean the home and allowed clutter and garbage to pile up. Although petitioner claims the mess should have been excused because she was planning to move, the record belies this as petitioner showed no intention of finding other housing. The worker testified that she supplied petitioner with multiple housing options, but petitioner failed to follow through. Petitioner knew that she was two months behind in rent yet did not communicate this to her worker until she had only one month left at her current apartment. The record also shows that the DHHR had arranged to pay for petitioner's first month of rent had she followed through with its housing options. Instead, petitioner moved into her elderly father-in-law's home where her estranged husband and adult son lived, while knowing that the DHHR could not place the children in this home. Petitioner blames the DHHR for not allowing the children to stay in a hotel or stay at the father-in-law's home, but the CPS worker explained at the final dispositional hearings why these housing options were not stable enough for the children's placement.

Finally, regarding petitioner's substance abuse, she both claims that she addressed this condition and argues that she never had a substance abuse problem. Nonetheless, the record supports a finding that petitioner indeed had an issue with substance abuse as she admitted to abusing methamphetamine and THC and tested positive for these substances as late as April of 2021 during her trial reunification with the children. Contrary to petitioner's contentions on appeal, the record supports a finding that petitioner did not successfully address her substance abuse issues.

The Court finds that petitioner clearly failed to follow through with the DHHR's rehabilitative services to address the conditions of abuse and neglect. Importantly, this constitutes a situation in which there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected in the near future under West Virginia Code § 49-4-604(c)(3). Additionally, the record supports the termination of petitioner's custodial and guardianship rights as necessary for the children's welfare as they deserve permanency and stability. According to West Virginia Code § 49-4-604(c)(6), circuit courts may terminate custodial and guardianship rights upon these findings.

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 16, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: May 12, 2022

7

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice C. Haley Bunn